UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-00684-FL

| | | |
|---|---|---|
| EXCLAIM MARKETING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DIRECTV, INC. and | ) | |
| DIRECTV OPERATIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss (DE # 9). Plaintiff filed a response (DE # 18), and defendants filed a reply (DE # 20). Accordingly, the matter is ripe for decision. For the following reasons, the motion to dismiss is granted in part and denied in part.

## STATEMENT OF THE CASE

On October 28, 2011, plaintiff, Exclaim Marketing, LLC ("Exclaim"), filed this action in Wake County Superior Court against defendants, DIRECTV, Inc. and DIRECTV Operations, LLC (collectively, "DIRECTV"), alleging tortious interference with contract, tortious interference with business relationships and prospective advantage, defamation, and unfair and deceptive trade practices. On December 1, 2011, the matter was removed to this court, and on December 14, 2011, defendants filed the instant motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On January 24, 2012, the court entered an order memorializing the parties' agreement with respect to certain discovery, and all other discovery and action in this matter was stayed pending the court's decision on the instant motion.

## STATEMENT OF THE FACTS

These are the relevant facts as alleged by Exclaim in its complaint. Exclaim is a North Carolina limited liability company formed in 2005. It provides "inbound marketing services" in a variety of industries, including the satellite television industry. Exclaim does not itself provide satellite service or installation, but contracts with satellite service dealers to provide them with customer leads. These dealers have contracts to provide satellite television service with either DIRECTV or Dish Network (or both), which are the only two consumer satellite television service providers in the United States. Exclaim maintains an "inbound call center" and owns over 10,000 phone numbers, some of which are published in generic advertisements for satellite television service. Consumers calling an Exclaim phone number to order satellite television service are routed to one of Exclaim's client satellite television dealers. Exclaim is paid by each dealer based on the number of calls the dealer receives from Exclaim's call center.

Exclaim worked with both DIRECTV and Dish Network dealers. In 2005, Exclaim contacted DIRECTV's corporate office directly and provided a DIRECTV manager with marketing materials. While DIRECTV did not respond to the solicitation, a DIRECTV area service manager did provide Exclaim with dealer leads. Exclaim generated millions of dollars in sales for DIRECTV through its dealers.

Beginning in 2007, for reasons unknown to Exclaim, DIRECTV began to interfere with Exclaim's dealer relationships. For example, in 2008, DIRECTV instructed one of its area service managers to inform his dealers to stop working with Exclaim. DIRECTV initially refused to discuss the matter with Exclaim or the dealer, but ultimately provided Exclaim with a list of 29 telephone numbers that were listed as DIRECTV but actually belonged to Exclaim, which listings DIRECTV found objectionable. Exclaim's investigation of this issue revealed

2

that, despite its instruction to the telephone companies when it purchased the numbers to disassociate them from DIRECTV, the references to DIRECTV were not removed. Exclaim again contacted the telephone companies and instructed them to remove any reference to DIRECTV. For some of these numbers, Exclaim had to request disassociation with DIRECTV three or four times before the reference was removed by the phone company. Exclaim also implemented what it refers to as a "DIRECTV Dismiss" system, whereby if a consumer called one of the 29 telephone numbers at issue, a recorded message stated that the number called was not DIRECTV and that DIRECTV service could not be obtained through that number.

Despite Exclaim's efforts to address DIRECTV's concerns, DIRECTV continued to instruct its dealers to stop doing business with Exclaim. Between 2008 and 2011, DIRECTV representatives took actions such as calling Exclaim numbers pretending to be potential customers, which disrupted Exclaim's business; representing to dealers that Exclaim was engaged in wrongful conduct and was "blacklisted;" and threatening to terminate contracts with dealers who worked with Exclaim. At least one dealer, Big Dog Satellite, a "dual dealer" selling both DIRECTV and Dish Network, did, in fact, discontinue its business with Exclaim at the request of DIRECTV even though this dealer only used Exclaim to solicit Dish Network customers. Other dealers reduced purchases from Exclaim. As a result, Exclaim was required to offer substantial discounts in an effort to retain customers. Ultimately, Exclaim ceased providing its services related to DIRECTV and continued marketing only as to Dish Network.

## DISCUSSION

A.    Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ.

3

P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Alfaro v. United States, No. 5:09-CT-3073-D, 2011 WL 561320, at *1 (E.D.N.C. Feb. 8, 2011) (citing Iqbal, 129 S. Ct. at 1949-50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)). All well-pleaded facts must be accepted as true and reasonable inferences drawn in favor of the plaintiff. Nemet Chevrolet, 591 F.3d at 253 (citations omitted).

B.    Analysis

DIRECTV argues that each of Exclaim's claims should be dismissed for failure to state a claim upon which relief can be granted. Accordingly, each claim will be addressed in turn.

1. Tortious Interference Claims

Exclaim has alleged claims against DIRECTV for tortious interference with contract and tortious interference with prospective advantage. DIRECTV contends that, as to both types of tortious interference claims, the interference must be "without justification," and its actions were justified by its legitimate business interests of (1) controlling how and by whom its products and services are marketed; (2) protecting its trademarks; and (3) competing with Dish Network.

4

Exclaim counters that DIRECTV's interference was not justified and that, in any event, such a determination is not appropriate on a Rule 12(b)(6) motion.

North Carolina law provides that there are five elements required to state a claim of tortious interference with contract: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff." Team 7, LLC v. Protective Solutions, Inc., 759 F. Supp. 2d 698, 705 (E.D.N.C. 2010) (quoting United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing Childress v. Abeles, 240 N.C. 667, 84 S.E.2d 176 (1954))). A claim for tortious interference with prospective advantage requires proof of somewhat different elements than a tortious interference with contract claim. Georgia Pacific Consumer Prods., LP v. Von Drehle Corp., 618 F.3d 441, 456 n.7 (4th Cir. 2010) (citing S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC, 189 N.C. App. 601, 614-15, 659 S.E.2d 442, 452 (2008)). "In order for a plaintiff to be successful on a claim of tortious interference with prospective advantage, plaintiff 'must show that [d]efendants induced a third party to refrain from entering into a contract with [p]laintiff without justification. Additionally, [p]laintiff must show that the contract would have ensued but for [d]efendants' interference.'" S.N.R. Mgmt. Corp., 189 N.C. App. at 615 (quoting Holroyd v. Montgomery Cty., 167 N.C. App. 539, 546, 606 S.E.2d 353, 358 (2004) (internal citations and quotations omitted)). Thus, while the tortious interference claims are distinct, they both require that the interference be without justification.

Additionally, under North Carolina law, interference is considered justified when a "non-outsider" interferes with a contract to protect a legitimate business interest. B.V.I. Indus., Inc. v.

5

Microsoft Corp., No. 87-2007, 826 F.2d 1059, 1987 WL 38488, at *3 (4th Cir. Aug. 11, 1987). A "non-outsider" is "one who is not a party to a terminated contract, yet has a legitimate business interest of his own in the subject matter of the contract[.]" Id. "Non-outsiders are entitled to interfere in the contracts of others provided they do so to protect a legitimate business interest." Id. However, "[i]f the non-outsider's actions are not the result of a legitimate business interest, but rather the result of a malicious purpose or motive, then the interference with the contract is actionable." Id. (citing Smith v. Ford Motor Co., 289 N.C. 71, 87-88, 221 S.E.2d 282, 292 (1976)).

For purposes of this motion, the only element of the tortious interference claims that appears to be at issue is the requirement, common to both claims, that the interference be "without justification." Accordingly, the court will limit its discussion to that issue and will consider whether the allegations on the face of the complaint reveal (1) that DIRECTV is a "non-outsider;" (2) that DIRECTV's alleged interference was consistent with protecting its legitimate business interests; or (3) that DIRECTV was, in fact, motivated by actual malice or improper motive.

a. The issue of justification is ripe for decision.

As an initial matter, Exclaim contends that the issue of justification is not appropriately decided on a 12(b)(6) motion, because the North Carolina Court of Appeals has found that issues of motive and intent cannot be decided by summary judgment. The court agrees that if a plaintiff's allegations of improper motive are sufficiently pled and supported by some evidence, then it would be inappropriate to decide the issue of justification at the summary judgment stage. However, such is not the posture of the present case.

6

Here, the court considers the issue on a motion to dismiss, not on a motion for summary judgment. On a motion to dismiss, the court must consider whether Exclaim has failed to sufficiently *plead* the required element—that defendant's actions were without justification—and dismissal is entirely appropriate if Exclaim has not satisfied the requisite pleading standard. See Market Choice, 2009 WL 2590651, at *7 ("A motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged.") (quoting Peoples Sec., 322 N.C. at 220). Therefore, the court will proceed with its substantive analysis as to the element of justification.

b. The complaint reveals that DIRECTV is a "non-outsider."

DIRECTV argues that it was a "non-outsider" to Exclaim's contracts with DIRECTV's dealers. Exclaim contends that DIRECTV is not an "insider" because, "Defendants were never parties to any agreements between Exclaim and its clients, and any interest they may have in how their dealers conduct business does not translate into giving the Defendants 'insider status' such that they can legitimately claim any privilege." Pl.'s Mem. in Opp'n at 8 (DE # 18). Exclaim misapprehends what it means to be a non-outsider under North Carolina law.

It is not required that the non-outsider be a party to the agreement; to the contrary, a party to a contract cannot be liable for tortious interference. See Waters v. Collins & Aikman Prods. Co., 208 F. Supp. 2d 593, 595 (W.D.N.C. 2002) ("North Carolina decisions and federal case law interpreting North Carolina law have held consistently that a party to a contract cannot tortiously interfere with that contract.") (citing Wagoner v. Elkin City Schools' Bd. of Ed., 113 N.C. App. 579, 587, 440 S.E.2d 119, 124 (1994); Michaux v. Rexnord Corp., No. 1:01CV15, 2001 WL 1019852, at *1 (W.D.N.C. Apr. 9, 2001)). Further, DIRECTV's claimed interest in how their dealers conduct business is precisely the type of interest that confers non-outsider status on a

7

party. See Ford Motor Co., 289 N.C. at 87 (concluding that the defendant was a non-outsider to a contract between the plaintiff and defendant's dealer, because defendant had a legitimate business interest in the success of its dealer). Accordingly, based on the allegations of the complaint, DIRECTV is a non-outsider to the contracts between Exclaim and its dealers.

Having concluded that the facts alleged support DIRECTV's assertion that it is a non-outsider, the court must next consider whether DIRECTV's actions were consistent with its legitimate business interests.

      c. The complaint reveals that DIRECTV's actions were consistent with its legitimate business interests.

DIRECTV claims three legitimate business interests as justification for the alleged interference: (1) an interest in controlling how and by whom its products and services are marketed; (2) protection of its trademarks; and (3) its competition with Dish Network. The complaint, on its face, supports each of these claimed interests.

First, with respect to DIRECTV's alleged interest in the marketing of its services, Exclaim alleges that it offers its services to dealers who have agreements with DIRECTV, Compl. ¶ 25 (DE # 1-1), and that DIRECTV, through one of its managers, directed DIRECTV dealers not to work with Exclaim, id. ¶ 34. Exclaim also alleges that DIRECTV directed its dealers to stop running ads after it learned that the ads originated from or were copies of ads used by Exclaim. Id. ¶¶ 91-94. These allegations are consistent with a company attempting to control how and by whom its services are marketed and support DIRECTV's alleged interest in the marketing of its services.

Next, with respect to DIRECTV's trademarks, Exclaim alleges that DIRECTV informed Exclaim that it found objectionable certain telephone numbers routed to its call center because

8

they were listed as DIRECTV numbers and that, despite Exclaim's efforts to remedy this issue in 2008, Exclaim was still using some numbers listed as DIRECTV in 2011. Id. ¶¶ 38-42, 62. Exclaim further alleges that DIRECTV directed some of its managers and its marketing firm to call Exclaim's call center and then contacted Exclaim regarding telephone numbers it contended were improper. Id. ¶¶ 53, 60-61. These allegations are consistent with a company attempting to protect its trademarks and eliminate potential customer confusion and, likewise, support DIRECTV's alleged interest in protecting its trademarks.

Finally, with respect to DIRECTV's competition with Dish Network, Exclaim alleges that DIRECTV and Dish Network are the only consumer satellite television service providers in the United States and that Exclaim also provided services to Dish Network and its dealers. Id. ¶¶ 18, 29, 80. While DIRECTV may utilize some dealers who also provide Dish Network service, it may still have a legitimate interest in limiting its dealer's use of a marketing group that it has no agreement with or control over and that directs calls to its sole competitor, particularly where Exclaim has admitted that its employees "will not follow protocols 100% of the time," id. ¶ 71. See Market Choice, Inc. v. New England Coffee Co., No. 5:08-CV-90, 2009 WL 2590651, at * 7 (W.D.N.C. Aug. 18, 2009) ("[C]ompetition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful.") (quoting Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988)). Therefore, the allegations are consistent with and support DIRECTV's alleged interest in competing with Dish Network.

Accordingly, based on the allegations of the complaint, DIRECTV's actions were consistent with its legitimate business interests. However, the fact that DIRECTV can point to legitimate business interests that are evident on the face of the complaint in justification for its

9

actions does not necessarily end the inquiry, because Exclaim has argued that the court must still

consider whether DIRECTV was, in fact, motivated by its legitimate business interests or, rather,

by actual malice or improper motive.

> d. Exclaim failed to sufficiently plead that DIRECTV acted with actual malice or improper motive.

DIRECTV contends that to survive a motion to dismiss, "the complaint must admit no

motive for interference other than malice," Filmar Racing, Inc. v. Stewart, 141 N.C. App. 668,

674, 541 S.E.2d 733, 738 (2001), and that because the complaint reveals that DIRECTV had a

legitimate business purpose, it cannot be liable for tortious interference. Exclaim contends that

the existence of a legitimate business purpose would not preclude a finding that DIRECTV's

actions were without justification if, in fact, DIRECTV was motivated by actual malice. See

Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 462, 524 S.E.2d 821, 826 (2000) ("The

qualified privilege of a non-outsider is lost if exercised for motives other than reasonable, good

faith attempts to protect the non-outsider's interests in the contract interfered with."). The court

concludes that the facts alleged in the complaint would not support a finding that DIRECTV's

alleged interference was motivated by actual malice as opposed to its legitimate business

interests.

As defendant correctly observed, both North Carolina state courts and federal courts

applying North Carolina law have stated that "[i]n order to demonstrate the element of acting

without justification, a plaintiff's complaint must show 'no motive for interference other than

malice.'" See, e.g., Fen-Phen Series 2005-01 v. Farrin, No. 1:09CV479, 2010 WL 1740521, at

*4 (M.D.N.C. Apr. 28, 2010) (quoting Filmar Racing, 141 N.C. App. at 674), adopted by No.

1:09-CV-479-JAB (M.D.N.C. July 19, 2010), aff'd, 436 Fed. App'x 150, 2011 WL 2515973 (4th

Cir. June 24, 2011). However, the North Carolina Supreme Court has explained that the non-outsider will not have immunity when its actions have "no relation whatever to the source of the non-outsider status," because "[i]n such a case, the defendant is in the same position as an outsider." Ford Motor Co., 289 N.C. at 87-88. In other words, a non-outsider is not "[i]pso facto immune to suit for damages for bringing about the termination of [a] contract in all cases." Id. at 88. To the extent tension arguably exists between these statements of law, the court need not resolve it, because Exclaim has simply failed to sufficiently plead facts in support of its contention that DIRECTV acted with actual malice.

Exclaim points to several allegations that it contends support its claim that DIRECTV was motivated by actual malice and not by legitimate business interests. For example, in the complaint, Exclaim alleges that DIRECTV acted contrary to its own business interests because Exclaim made millions of dollars for DIRECTV, Compl. ¶ 88, and that DIRECTV acted with actual malice, id. ¶¶ 54, 98, 105. Such allegations are speculative and conclusory and, thus, insufficient. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555 (citations omitted). Here, Exclaim admits in its complaint that it "has never been able to understand" the reasons for DIRECTV's actions. Compl. ¶ 33. Furthermore, the factual allegations made in the complaint with respect to DIRECTV's actions are consistent with those of a company protecting its interests, as discussed above, and provide only speculation that DIRECTV acted with actual malice or improper motive. See Fen-Phen, 2010 WL 1740521, at *4 ("To state a claim for tortious interference with contract, Plaintiff must plead factual content that allows the court to draw the reasonable inference that Defendant acted with malice, rather than just alleging that Defendant's actions were undertaken with malice."). As to the latter allegation, simply stating that DIRECTV acted with actual malice is likewise

11

insufficient, as made clear in Twombly. 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do[.]").

Exclaim also suggests in its response to the instant motion to dismiss that "Defendants could have protected their legitimate business interests by instructing dealers who work with them to decline to work with Exclaim." Pl.'s Mem. in Opp'n at 18. And yet, that is precisely what DIRECTV did, and that Exclaim does not understand or agree with DIRECTV's position does not convert a legitimate business action to tortious conduct. Further, Exclaim's complaint lacks the type of factual allegations that North Carolina federal and state courts have found sufficient to defeat a motion to dismiss. See, e.g., Emory Util. Inc. v. Time Warner Cable, Inc., No. 7:09-CV-169-BO, 2010 WL 2402888, at *3 (E.D.N.C. June 11, 2010) (concluding that allegation that defendant personally benefitted from taking contract work from plaintiff and awarding it to a third party that later gave him a job was sufficient to plead that defendant's motives were improper and not for a legitimate business purpose); Ford Motor Co., 289 N.C. at 84 (concluding that dismissal for failure to state a claim was error where plaintiff alleged that defendant's "sole motive" for its interference with plaintiff's contract with defendant's dealer was defendant's resentment of plaintiff's affiliation with an organization of which it disapproved). Cf. B.V.I. Indus., Inc., 1987 WL 38488, at *3 (concluding that the lower court erred in granting summary judgment to defendant on a tortious interference claim where the plaintiff's allegation that defendant's actions were in retaliation against plaintiff for going over his head during license negotiations were sufficient for a jury to find that defendant's alleged legitimate business interest was pretext).

Accordingly, because the factual allegations made by Exclaim are consistent with DIRECTV acting to protect its legitimate business interests and provide no basis for a finding

12

that DIRECTV acted with actual malice or improper motive, Exclaim has failed to sufficiently plead that DIRECTV acted without justification and, thus, has failed to state a claim for tortious interference with contract or tortious interference with prospective advantage.

2. Defamation Claim

Exclaim has also alleged a claim for defamation against DIRECTV. Exclaim contends that DIRECTV's actions amount to defamation *per se* or, alternatively, defamation *per quod*. DIRECTV contends that the allegations of the complaint are insufficient to establish that DIRECTV made defamatory statements as to Exclaim.

"In order to recover for defamation in North Carolina, a plaintiff must show that the defendant (1) made false, defamatory statements of or concerning the plaintiff, which were (2) published to a third person, (3) causing injury to the plaintiff's reputation." Lanier Const. Co., Inc. v. City of Clinton, N.C., 812 F. Supp. 2d 696, 700 (E.D.N.C. 2011) (citing Boyce v. Isley, PLLC v. Cooper, 710 S.E.2d 309, 317 (N.C. Ct. App. 2011)). Defamation can be in the form of libel, any false written publication to a third party, or slander, a false oral communication published to a third party. Cummings v. Lumbee Tribe of North Carolina, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008) (citing Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 459, 524 S.E.2d 821 (2000)). "To establish a claim for defamation *per se*, a plaintiff must prove: '(1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person.'" Id. (quoting Friel v. Angell Care, Inc., 113 N.C. App. 505, 509, 440 S.E.2d 111, 113-14 (1994)). "For defamation *per se*, malice and damages are presumed as a matter of law." Id. (citing Donovan v. Fiumara, 114 N.C. App. 524, 528, 442 S.E.2d 572,

13

575 (1994)). "When the defamatory character of the words does not appear on their face, but only in connection with extrinsic, explanatory facts, they are only actionable as . . . [defamation] *per quod*." Id. (quoting Eli Research, Inc. v. United Commc'n Group, *LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004) (citing Badame v. Lampke, 242 N.C. 755, 756-57, 89 S.E.2d 466 (1955))). "When stating a claim for defamation *per quod*, a plaintiff must plead and prove special damages and malice, in addition to the aforementioned elements of a claim for defamation *per se*." Id. (citing Eli Research, 312 F. Supp. 2d at 757).

In its complaint, Exclaim generally alleged the following facts in support of its defamation claim:

> 109. Among other things, Defendants have told and/or written to third parties:
>
> a. That Exclaim has engaged in illegal conduct;
> b. That ads posted by Exclaim were illegal;
> c. That ads posted by Exclaim were unspecified "violations"; [sic] and
> d. That as a result of improper actions by Exclaim, Defendants put Exclaim on a "blacklist."

Compl. ¶ 109. Specifically, Exclaim alleged that DIRECTV "[r]epeatedly told the Dealers that Exclaim was engaged in wrongful conduct, which assertions were entirely untrue[.]" Id. ¶ 53(c).

First, DIRECTV argues that the complaint's allegations lack sufficient detail to meet the plausibility standard required to survive a motion to dismiss. Specifically, it contends that there is no factual detail or context, such as the acts or ads that were alleged to be illegal or the identities of the speaker or recipient. However, unlike a fraud claim, there is no heightened pleading standard for a defamation claim. See Market Choice, 2009 WL 2590651, at *5 ("[N]either the Federal Rules of Civil Procedure nor the Fourth Circuit impose a special or heightened pleading standard for defamation.") (citing Wuchenich v. Shenandoah Mem'l Hosp.,

14

215 F.3d 1324, 2000 WL 665633, at *14 (4th Cir. 2000); Elina Adoption Servs. Inc. v. Carolina Adoption Servs., Inc., 2008 WL 40005738, at *13 (M.D.N.C. 2008)). Here, Exclaim's allegations that DIRECTV falsely told its dealers that Exclaim was engaged in illegal or improper conduct, though minimal, are sufficient to support a defamation claim. Furthermore, while DIRECTV claims that the complaint does not make clear the subject matter of the allegedly defamatory statements, it goes on to discuss how any allegedly defamatory statements regarding Exclaim's use of DIRECTV's trademarks would, in fact, be true statements. Accordingly, it appears that the complaint is, in fact, sufficient to put DIRECTV on notice as to the subject matter of certain allegedly defamatory statements.

Next, DIRECTV argues that accusations of "illegal conduct" are not sufficient to support a defamation *per se* claim and contends that North Carolina courts have held that accusations of dishonesty or untruthfulness are not actionable *per se*, Stutts v. Duke Power Co., 47 N.C. App. 76, 82, 266 S.E.2d 861, 865 (1980) (citing Satterfield v. McLellan Stores, 215 N.C. 582, 2 S.E.2d 709 (1939); Ringgold v. Land, 212 N.C. 369, 193 S.E. 267 (1937)). However, in the present case, the allegation is one of *illegal* conduct, not dishonesty or untruthfulness, and North Carolina courts have recognized that certain allegations of criminal conduct may be actionable *per se*. See Ringgold, 193 S.E. at 268 ("The principle seems to be well established, in relation to the action of slander, that the words spoken should contain an express imputation of some crime liable to punishment, some capital offense, or other infamous crime or misdemeanor.") (quoting Eure v. Odom, 9 N.C. 52 (1822)). Furthermore, North Carolina courts have held that "an allegation that impeaches the plaintiff in his trade, business, or profession" may be actionable *per se*. Kinesis Advertising, Inc. v. Hill, 187 N.C. App. 1, 18, 652 S.E.2d 284, 296 (2007). Here, the allegations that DIRECTV stated that Exclaim was running illegal ads or that its ads constituted

15

"violations" is one that "impeaches the plaintiff in his trade, business, or profession" and is sufficient to state a claim for defamation *per se*. Id.

Finally, DIRECTV argues that the complaint demonstrates that the allegedly defamatory statements were true, because the facts of the complaint demonstrate that Exclaim infringed DIRECTV's trademark. While the complaint does allege that DIRECTV raised with Exclaim concerns related to its trademarks and that Exclaim attempted to address those concerns, the allegations do not admit trademark infringement on the part of Exclaim. Accordingly, there is no defense of truth evident on the face of the complaint that would justify dismissal of the defamation claim.

Having determined that the allegations are sufficient to state a claim for defamation *per se*, the issue of whether Exclaim has stated a claim for defamation *per quod* need not be reached, and the motion to dismiss with respect to Exclaim's defamation claim is denied.

3.  Unfair and Deceptive Trade Practices Act Claim

Lastly, Exclaim has alleged a claim for unfair and deceptive trade practices ("UDTP") pursuant to North Carolina General Statute § 75-1.1. In response, DIRECTV contends that Exclaim has alleged no facts to support such a claim.

"To state a claim for unfair or deceptive trade practices (UDTP) under N.C. Gen. Stat. § 75-1.1, a plaintiff must allege three elements: '(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant.'" Market Choice, 2009 WL 2590651, at *9 (quoting Nucor Corp. v. Prudential Equity Group, LLC, 189 N.C. App. 731, 738, 659 S.E.2d 483, 488 (2008)). North Carolina courts have recognized that "[d]efamation *per se* impeaching a party in its business activities may constitute an unfair or deceptive act in or affecting commerce under § 75-1.1." Id. at *11 (citing Ellis v. Northern Star

16

Co., 326 N.C. 219, 225, 388 S.E.2d 127, 131 (1990); Ausley v. Bishop, 133 N.C. App. 210, 216, 515 S.E.2d 72, 77 (1999)).

Exclaim has sufficiently stated a claim for defamation *per se* related to its business activities, see supra Section II.2, and has also alleged that DIRECTV's acts injured Exclaim through loss of business, Compl. ¶¶ 81, 110-12, 121. See Market Choice, 2009 WL 2590651, at *11 (allowing UDTP claim to proceed where plaintiff had stated claim for defamation *per se* related to its business reputation and alleged actual injury resulting therefrom.) Accordingly, Exclaim has sufficiently stated a UDTP claim, and its motion to dismiss as to that claim is denied.

## CONCLUSION

Defendants' motion to dismiss (DE # 9) is GRANTED IN PART as to the tortious interference with contract and tortious interference with prospective advantage claims and DENIED IN PART as to the defamation and unfair and deceptive trade practices claims.

SO ORDERED, this the 23rd day of July, 2012.

LOUISE W. FLANAGAN
United States District Judge

17