THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-684-FL

| | |
|---|---|
| EXCLAIM MARKETING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| DIRECTV, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter, recently concluded at trial with jury verdicts returned, is before the court with reference to defendant's motion in limine to exclude plaintiff's expert witness on damages, Diane Lahti ("Lahti"). (DE 106). The court found that Lahti's trial testimony complied with both Federal Rule of Evidence 702 and prior orders in this case. Reasons grounding the court's oral order November 18, 2014, denying defendant's motion, are memorialized further below.

**DISCUSSION**

A.  Overview

The parties' battle over the admissibility of Lahti's testimony has a lengthy history in this case. The court refers to and incorporates the case history provided in its March 31, 2014, order on the parties' cross-motions for summary judgment and defendant's motion to strike ("March 31 Order") (DE 95); its October 22, 2014, order granting in part defendant's motion to exclude plaintiff's expert witness ("October 22 Order") (DE 141), and its October 31, 2014, order denying in part defendant's motion to exclude plaintiff's expert witness ("October 31 Order") (DE 148).

Prior orders addressed one component of Lahti's damages calculation, concerning losses in *number of sold calls*. The fundamental problem with that testimony concerned the lack of evidence to support plaintiff's theory of causation regarding these losses. Plaintiff alleged that these losses resulted from defendant's communicating certain statements to independent satellite dealers. Lahti had originally employed a market share analysis to calculate these losses, which included the entire market of independent satellite dealers. Plaintiff's failure to provide sufficient evidence to show that these statements reached a substantial sector of the independent satellite dealer market, and its further failure to adequately explain how the market share analysis could remain reliable without this evidence, led the court to conclude prior to trial that the lost sold calls aspect of her damages calculation failed to comply with Rule 702.

In contrast, the testimony at issue in this instance related to a separate aspect of Lahti's damages calculation, concerning losses in plaintiff's *revenue per sold call*. Because sufficient evidence supported this theory, and because the court found Lahti's testimony otherwise complied with Rule 702, it allowed her to testify at trial.

B. Analysis

As noted in previous orders addressing plaintiff's expert, rejection of expert testimony is the exception rather than the rule. Fed. R. Evid. 702 advisory committee's note (2000). Rule 702 provides that expert testimony is appropriate when the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Rule 702 further provides that a witness qualified as an expert may be permitted to testify where 1) "the testimony is based on sufficient facts or data," 2) "the testimony is the product of reliable

2

principles and methods," and 3) "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

In her original analysis, Lahti prepared a "but for" analysis of damages, which sought to quantify damages according to projections of what plaintiff's revenue and expenses would have been had defendant's alleged unfair and deceptive conduct not occurred. Lahti identified two areas where plaintiff's revenues were falling short of what they would be in the "but for" world: 1) a decrease in the number of calls sold; and 2) a decrease in revenue per call. To calculate declines in the number of calls sold, Lahti used a market share analysis, based on the decrease in plaintiff's shares of the total market of calls which were sold to independent satellite dealers following defendant's alleged conduct. These independent satellite dealers include dealers who sell only defendant's DIRECTV service, dealers who sell the service of defendant's rival, Dish Network, and dealers who sell both services ("Dual" dealers). Lahti's method of calculating a decrease in the second component of revenue decline, lost revenue per call, is explained further below.

The March 31 Order granted in part and denied in part defendant's motion to strike plaintiff's expert. It granted the motion to the extent that Lahti's testimony assumed a cause that extended to a market including Dish-only dealers. (March 31 Order, at 42). In reaching this decision, the court noted that Lahti's assumption was based on her understanding of the satellite dealer market as a place of fluid communications where "the potential buyers of [plaintiff]'s services interrelate, they talk, they meet, they get together at conferences, they chat, they – information such as a defamatory comment is prone to spread." (DE 47-6, p. 149). The court explained that plaintiff had

> not established [Lahti's] qualifications or basis of knowledge to make these statements [regarding communications within the Dish-only dealer market]. Nor has plaintiff offered other evidence to support her assertion. Without more, the court limits Lahti's testimony only to the market of retailers that sold defendants' product.

(March 31 Order, at 42).

In September 2014, defendant filed the instant motion, asserting that plaintiff had presented it with a revised report ("First Revised Report") that failed to make the changes necessary to comply with the March 31 Order. Defendant specifically noted that plaintiff had continued to include sales to Dish-only dealers in calculating plaintiff's reduced market share. The October 22 Order held that 1) plaintiff's new evidence regarding lost sales to Dish-only dealers, which was offered to support testimony regarding damages, was insufficient and untimely, and 2) plaintiff had failed to show that its method for calculating damages complied with the March 31 Order. (October 22 Order, at 11, 15).

In explaining the latter ruling, the court noted that "the recovery of damages must not include 'that portion of the price decline that is the result of forces unrelated to the wrong.' " (October 22 Order, at 15) (quoting Miller v. Asensio & Co., Inc., 364 F. 3d 223, 232 (4th Cir. 2004)). It also noted that "a party should be able to 'explain why the opinion remains sound in light of alternative causes suggested by the opposing party.'" (October 22 Order, at 15) (quoting Westberry v. Gislaved Gummi AB, 178 F.3d 257, 265 (4th Cir. 1999)). Plaintiff's arguments essentially amounted to assertions that Lahti's testimony complied because it was based on market share. The court found these arguments and explanations conclusory, confusing and uninformative, holding that

> [p]laintiff must give a reasonable explanation for *why* its market-share analysis is an accurate basis to determine damages in order to show, by a preponderance of the evidence, that Lahti's testimony is based upon sufficient facts or data, and the product of reliable principles and methods which have been reliably applied to the facts of this case . . . . When both the historical/actual sales and the "but for"/expected sales include sales made to Dish-only dealers, plaintiff must give some reasonable explanation for why the difference between these two figures would not include losses from Dish-only dealers . . . . While there may be reasons why the inclusion of Dish-only dealers was not important in calculating market share prior

4

to defendants' unfair and deceptive trade practices, plaintiff must give a reasonable explanation for why that is the case.

(October 22 Order, at 16-17).

Because plaintiff had failed to offer a reasonable explanation for why including sales to Dish-only dealers did not affect the market share analysis, the court directed plaintiff "to file a revised expert report, or otherwise file a further response demonstrating how the present report excludes such Dish-only dealers from the calculation of the difference between expected and actual market shares . . . ." (Id. at 17-18).

Plaintiff responded by filing a second revised report on October 27, 2014. (Second Revised Report) (DE 142). The Second Revised Report shifted the calculation for lost calls, from a market share analysis to an analysis based upon losses in the raw number of calls "sold" to the "Dual" market of retailers. Defendant responded, renewing its exclusion argument. Pertinent here, defendant raised a new argument, not previously advanced in earlier briefing on plaintiff's expert witness, that Lahti's report still failed to comply with the court's earlier orders because she did not exclude Dish-only dealers from her calculations of *lost revenue per call*. The court's October 31 Order directed plaintiff to further explain how Lahti's opinion complied with the court's March 31 Order at the upcoming Final Pretrial Conference to be held November 3, 2014.

After hearing arguments from the parties on occasion of the final pretrial conference, the court held defendant's motion in abeyance and set voir dire of Lahti for the fourth day of trial, on the morning of November 18, 2014.[1] Following voir dire, defendant maintained its position that the court should exclude Lahti because 1) her calculations of damages remained out of compliance

---

[1] The court recalls travel issues concerning both Lahti and the defendant's expert. The date of the voir dire was determinated by Lahti's travel schedule. Defendant's expert was present at the voir dire.

with the March 31 Order because her calculation of lost revenue per call continued to include sales to Dish-only dealers, and 2) Lahti's treatment of "fixed marketing expense" demonstrated that her damages calculations were unreliable. The court addresses more particularly each objection in turn below.

        1.      Lost Revenues Per Call

As presented to the court in the Second Revised Report and at trial, Lahti's calculation of damages from lost revenues per call may be summarized as follows. To make her calculations, Lahti considered plaintiff's historic price increases and prices charged by one of plaintiff's competitors, and concluded that plaintiff would have been able to raise its prices by at least 6% per year between the years 2009 and 2013, "but for" defendant's conduct. She then calculated the difference between this "but for" price and plaintiff's historic price per call, and multiplied the difference by the total number of calls sold per year. The figures used for total number of calls did not distinguish between Dish-only dealers, DIRECTV-only dealers and Dual dealers.

This method of calculation satisfactorily complied with the court's earlier orders, it was found. As explained above, the root concern of the earlier orders was plaintiff's failure to offer sufficient facts to support the market share theory that Lahti employed. The court held in the March 31 Order that Lahti could not testify as to Dish-only dealers because plaintiff had not presented evidence, aside from Lahti's own bare assertions, that Dish-only dealers were affected by defendant's sales. The court specified in the October 22 Order that unit sales to Dish-only dealers must be removed from market share analysis because plaintiff's evidence as to such lost market share was vague, unspecific and too late, and because plaintiff had failed to offer a reasonable explanation for why market share analysis could still be an accurate basis for damages.

6

In contrast, as to the inclusion of lost-revenues per call, plaintiff had both record evidence and a reasonable explanation for including Dish-only dealers. At trial, one of plaintiff's owners, Rick Stefanik ("Stefanik") testified that plaintiff pre-purchases its marketing. He testified that as a consequence, plaintiff lacks the ability to adjust the number of calls received to reflect sudden changes in demand. Stefanik further testified that plaintiff's clients set a certain budget for calls, based on the client's ability to answer and respond to such phone calls. When defendant's conduct began to cause plaintiff to lose clients, plaintiff was forced to continue selling calls to a diminished client base, overloading its existing clients with calls. Supply remained the same, while demand decreased. Consequently, the clients were unable to handle the number of calls they received, detrimentally affecting the client's sales performance. All of this led plaintiff to charge a lower price per call than it otherwise would have been able to charge "but for" plaintiff's conduct.

Testimony as to how damages were incurred does not necessarily require evidence concerning whether a client may have overheard any particular remark, or why a client terminated its relationship with plaintiff. There was no need for Lahti to testify as to the nature of communications within the satellite dealer market. The price effects were allegedly experienced by all dealers, based on the simple law of supply-and-demand. It was up to the jury to decide Stefanik's credibility concerning marketing practices, the described price decreases, and the like, factoring into Lahti's calculations. But those issues, going to credibility and weight of the evidence, do not bear on admissibility here. The court found that Lahti's testimony on this point was based on sufficient facts or data, and the product of reliable principles and methods which were reliably applied to the facts of this case, in satisfaction of Rule 702.

7

Case 5:11-cv-00684-FL   Document 195   Filed 12/02/14   Page 7 of 9

## 2. Fixed Marketing Expense

Turning to defendant's second ground for objection, defendant notes that plaintiff's calculation of fixed marketing expense has varied between the three versions of her report. In Lahti's original report, she calculated that the fixed marketing expense category contributed $464,974.00 to plaintiff's damages. (DE 108-1, at 30). In her First Revised Report, she calculated that fixed marketing expense would have no impact on plaintiff's damages. (DE 108-4, at 25). In her Second Revised Report, Lahti calculated that fixed marketing expense category would reduce plaintiff's damages by $2,102,865.00. Following voir dire, defendant argued that these variations reflected "somebody that's putting their thumb on the scale to find the final result that their looking for," which called into question the report's overall reliability.

The court did not find that variations in fixed marketing expense necessarily impute such ulterior motive. Notably, Lahti's recalculations of fixed marketing expense resulted in a *reduction* of plaintiff's damages by a net total of $2,567,839.00. Under voir dire, Lahti testified that the fixed marketing expense changed in her Second Revised Report as a result of the shift to considering solely Dual dealers for lost calls sold.

Lahti testified that the shift to a Dual-only dealer market resulted in a reduction in the fixed marketing expense category because she was no longer considering plaintiff's overall sales program strategy. Rather, her analysis considered that calls sold to Dual dealers would have been increasing in the world "but for" defendant's conduct. The increase in Dual dealer sales might have led to increases in plaintiff's fixed marketing expense. Thus, fixed marketing expenses might have been higher in the world "but for" defendant's conduct. In calculating plaintiff's profits and expenses "but for" defendant's conduct, Lahti took the increased fixed marketing expenses into account.

8

Thus, according to Lahti's testimony, the change to fixed marketing expense resulted from her efforts to make a conservative measure of damages.

The variations in fixed marketing expense are inadequate for the court to conclude that plaintiff or plaintiff's expert wrongfully manipulated the damages calculations. Lahti offered a reasonable explanation for why these figures changed. Plaintiff' demonstrated that Lahti's testimony meets the requirements of Rule 702. "Ultimately, it is the role of the jury to arrive at its own conclusions as to the credibility of the experts and the weight to give their testimony." United States v. Sharp, 400 F. App'x 741, 745 (4th Cir. 2010); see also id., (quoting United States v. Maceo, 873 F.2d 1, 6-7 (1st Cir. 1989)) ("It is the jury's role to determine the credibility of witnesses and the weight to accord their testimony.").

## CONCLUSION

For the reasons given, in supplement to those noted on the record at trial, the court denied defendant's motion in limine to exclude plaintiff's expert (DE 106).

SO ORDERED, this the 2nd day of December, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge