IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-684-FL

EXCLAIM MARKETING, LLC,            )
                                   )
              Plaintiff,           )
                                   )
       v.                          )            ORDER
                                   )
DIRECTV, LLC,                      )
                                   )
              Defendant.           )

This matter is before the court on defendant's second motion for judgment as a matter of law, made pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative for a new trial on the question of damages. (DE 209). Also pending before the court is defendant's first motion for judgment as a matter of law, (DE 175), and plaintiff's oral motion for judgment as a matter of law, both made pursuant to Federal Rule of Civil Procedure 50(a) and preserved for decision pursuant to Federal Rule of Civil Procedure 50(b). The issues raised have been briefed fully and in this posture are ripe for ruling. For the reasons stated more specifically herein, plaintiff's oral motion is denied, defendant's second motion for judgment as a matter of law is granted, and the jury's award of damages to plaintiff is vacated.[1]

## BACKGROUND

On October 28, 2011, plaintiff, a marketing company engaged in the business of connecting

_____

[1] Several additional motions are pending in this matter. (DE 212, 216, 219). The court will address these motions by separate order to follow.

consumers with retailers of satellite television, filed complaint in the Wake County, North Carolina, Superior Court, against defendant, a provider of satellite television, alleging numerous causes of action arising out of defendant's attempts to interfere with plaintiff's business relationships with its clients. Plaintiff asserted common law causes of action for tortious interference with contract, tortious interference with business relationships and prospective business advantage, and defamation, as well as a statutory cause of action for violation of the North Carolina Unfair and Deceptive Practices Act ("UDPA"), N.C. Gen. Stat. § 75–1.1 et seq.. Plaintiff's UDPA claim rested on various grounds including numerous allegedly false or misleading statements or categories of statements made by defendant to plaintiff's clients, as well as the fact defendant, through its agents or employees, made in excess of 175 phone calls to plaintiff's call center, sometimes using false names, over the course of six years. On December 1, 2011, defendant removed the matter to this court, pursuant to 28 U.S.C. § 1441, invoking the court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332, where the parties are business entities organized under the laws of different states, with their principal places of business in different states, and the amount in controversy exceeded $75,000.00. Thereafter, defendant answered and asserted various counterclaims against plaintiff. As relevant to the instant analysis, defendant alleged plaintiff willfully infringed on its trademark, the name "DirecTV," in violation of 15 U.S.C. § 1114.

The facts pertinent to the present motion, drawn from the court's order on summary judgment, supplemented through testimony received at trial, may be summarized as followed. Plaintiff is a marketing company that provides its clients, including consumer satellite television retailers ("retailers"), marketing services through telephone numbers ("listings") published throughout the United States. When consumers call a listing, a telemarketer screens the call and determines what

2

the customer wants to purchase, then the telemarketer forwards the call to one of plaintiff's clients. Plaintiff's clients pay for each call forwarded.

Defendant provides satellite television services throughout the United States. One way in which it gains new customers is through use of various retailers who market, advertise, and promote defendant's products and services. Defendant has the discretion to choose its affiliated retailers. Once it does so, defendant enters into a contract with those affiliated retailers that imposes certain restrictions on the individual retailer's marketing services, including a restriction that requires the retailers obtain written approval before using third parties, such as plaintiff, to market defendant's products. In 2005, plaintiff approached defendant seeking written approval to act in that capacity. Defendant neither retained plaintiff's services nor gave plaintiff written approval to act as a third-party marketing service for its retailers. Despite that fact, as early as 2007, plaintiff had purchased a number of phone book listings, associated with approximately 30 unique number, under defendant's trademark, "DirecTV," or some variant thereof ("infringing" or "branded" listings). These branded listings made up a small portion of plaintiff's total listings, most of which were "generic" advertisements for "satellite television." The generic listings did not use defendant's trademark.

Defendant, upon learning of these branded listings, believing that they were in violation of its trademark, began calling the numbers in an effort to identify who purchased them. Those calls were made by two parties. At first, defendant used Ketchum Marketing ("KDA"), a third-party agency, to investigate the listings. After a period of time Kristin Haley ("Haley"), one of defendant's employees, also began making calls to various listings. Around that same time, KDA and Haley also began calling some "generic" listings, several of which also belonged to plaintiff. Of those generic listings plaintiff owned, which also were called by KDA or Haley, the listing contained no evidence

3

of plaintiff's ownership.  In any case, during some of these calls to branded and generic listings, either KDA or Haley gave the telemarketer handling the call a false name.  Occasionally, either KDA or Haley would stay on the call long enough to be transferred to one of plaintiff's retailer clients.  Defendant never purchased satellite television services from those retailers.  Rather, each time defendant would hang up without buying anything.

Through the progress of this case, plaintiff's claims have been parred down or otherwise refined for purposes of trial.  On July 24, 2012, the court entered order granting in part and denying in part a motion to dismiss filed by defendant, made pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court dismissed plaintiff's tortious interference claims, but otherwise allowed the complaint to progress.  Later, on March 31, 2014, the court entered order on the parties' cross-motions for summary judgment.  As pertinent to the instant analysis, the court granted summary judgment in favor of defendant on plaintiff's defamation claim, holding that action was barred by the applicable one-year statute of limitations.  However, the court granted in part and denied in part defendant's motion for summary judgment as to plaintiff's UDPA claim.  The court held that six of the allegedly false statements or categories of statements potentially were actionable.  Those six statements or categories of statements included: 1) statements that plaintiff was engaging in illegal conduct; 2) statements that plaintiff was using non-compliant marketing and poor sales practices; 3) statement plaintiff was engaging in "white page" violations, arising out of plaintiff's improper use of defendant's trademark; 4) that defendant would be sending plaintiff a "cease and desist" letter because of its white page violations; 5) that plaintiff's co-owner, Aaron Zydonik, "burned" defendant in the past; and 6) that plaintiff had a "high churn" rate.[2]  In addition, the court held that plaintiff

---

[2] "Churn rate" refers to the rate at which subscribers discontinue their subscriptions to a certain service within a given period of time.  (DE 50, at 21).

4

could pursue its claim grounded in the fact of defendant's 175 phone calls to plaintiff's call center over a six year period.

In ruling on defendant's motion as it related to plaintiff's UDPA claim, the court established certain parameters for that claim inasmuch as it was grounded in the six allegedly false or misleading statements or categories of statements, should the case proceed to trial. In particular, the court held that those statements were actionable only if plaintiff could prove that they were made to a third party. In addition, the court held that defendant would be allowed to prove that those six statements were qualifiedly privileged, and thus not actionable, so long as the jury found defendant made such statements without malice and in an effort to further its legitimate business interest. No such affirmative defense was available as to defendant's act of calling plaintiff's call center and occasionally giving false names, because the fact of those calls was actionable regardless of the substance of the conversation.

Trial began on November 13, 2014. On November 18, 2014, at the conclusion of plaintiff's case-in-chief, defendant made motion for judgment as a matter of law, (DE 175), pursuant to Federal Rule of Civil Procedure 50(a). In that motion, defendant addressed plaintiff's UDPA claim only to the extent that claim was grounded in those six statements. The court took the motion under advisement, but did not issue any ruling. On November 24, 2014, the jury returned a verdict in plaintiff's favor. (DE 184). The jury found defendant had called plaintiff's call center "over 175 times over a six year period, at times using false names," and further found that such conduct proximately caused plaintiff injury, resulting in $760,000.00 in damages. With respect to the six statements, the jury found that they either had not been made to a third party or were not actionable by virtue of defendant's qualified privilege. In addition, the jury also returned a verdict in

5

defendant's favor on its counterclaim, finding that plaintiff willfully violated defendant's trademark through use of phone listings containing various spellings of "DirecTV."

Defendant's second motion for judgment as a matter of law, (DE 209), was filed on January 19, 2015. Defendant argues the jury finding underlying plaintiff's UDPA claim, that is the fact of the calls, is not an unfair or deceptive act or practice as a matter of law, as well as that its conduct was not "in or affecting commerce," as that term is defined by the relevant statute. In addition, defendant argues that plaintiff failed to show defendant's conduct proximately caused it any damage. In the alternative, defendant argues that, should the court conclude plaintiff is entitled to damages, that it is entitled to a new trial on the issue of damages because the jury's $760,000.00 award, which by statute automatically is trebled to $2,280,000.00, is excessive.

## COURT'S DISCUSSION

A.    Standard of Review

When a party is heard fully on an issue at trial, and, in view of the evidence presented, the court finds that a reasonable jury would not have a legally sufficient basis to find in favor of that party, the court may grant judgment for the opposing party as a matter of law. Fed. R. Civ. P. 50(a)(1). Where a motion for judgment as a matter of law is made during trial but not decided, or where the movant otherwise raises an objection as to the sufficiency of the non-movant's evidence the court may consider those issues after the jury has returned its verdict. Id. 50(b). A motion for judgment as a matter of law may be granted if the court "determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999). The court is to draw

all evidence in the light most favorable to the prevailing party and draw all reasonable inferences in that party's favor.  See Austin v. Torrington Co., 810 F.2d 416, 420 (4th Cir. 1987).

B.     Defendant's Motion for Judgment as a Matter of Law Made During Trial (DE 175)

Defendant's motion, made during trial, mounted an attack on plaintiff's UDPA claim only to the extent that claim was grounded in the six allegedly false or misleading statements.  That motion now properly is considered as one for judgment as a matter of law, made pursuant to Federal Rule of Civil Procedure 50(b).

At conclusion of trial, the jury found that those statements were not actionable either because they were not made to third parties or because they were protected by qualified privilege.  Because defendant incurred no liability from the statements, which formed the basis of its motion, defendant's motion is DENIED as MOOT.

C.     Defendant's Motion for Judgment as a Matter of Law Made Post-Trial (DE 209)

After the conclusion of trial, defendant filed a motion for judgment as a matter of law as to plaintiff's UDPA claim grounded in the jury's finding that defendant called plaintiff's call center "over 175 times over a six year period, at times using false names."  Although defendant made no formal motion for judgment as a matter of law on this issue during the course of trial, such motion is not necessary in light of the purely legal nature of the issue now presented.  See Belk, Inc. v. Meyer Corp., 679 F.3d 146, 160 & n.11 (4th Cir. 2012) (noting that Rule 50(b) preserves court's power to rule on legal matters after trial, so long as the proponent of the post-trial motion has objected to the legal issue during the conduct of trial); Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996) ("Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court.").  Rather,

defendant only must "properly preserve" its claim of error through objection. See Belk, 679 F.3d at 160 & n.11 (quoting Charles Alan Wright et al., Fed. Prac. & Pro., § 2540 (3d ed. 1998 & Supp. 2008)). That requirement has been satisfied. (See Day 3 Tr., DE 199, 121:6–9; Day 5 Tr., DE 201, 127:2–9) ("[T]he concept that phoning their call center multiple times over an extended period, occasionally using false names, I don't believe that that could rise to the level of an unfair and deceptive trade practice as a matter of law, and we would object.").

The UDPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75–1.1(a). The term "commerce" includes "all business activities, however denominated." Id. § 75–1.1(b). To state a claim under the UDPA, the plaintiff must prove 1) that the defendant committed an unfair or deceptive act or practice, 2) in or affecting commerce, and 3) the defendant's act proximately caused the plaintiff injury. Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88 (2013). "Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court." Gilbane, 80 F.3d at 902. In addition, whether conduct is "in or affecting commerce," also is a legal question for decision by the court. See White v. Thompson, 364 N.C. 47, 51 (2010); Sara Lee Corp. v. Carter, 351 N.C. 27, 31–32 (1999). Defendant is entitled to judgment as a matter of law because the act found by the jury was neither an "unfair or deceptive act or practice" nor "in or affecting commerce."

Before turning to the merits of defendant's motion, it is necessary to address the proper scope of the court's review when faced with the question of whether a particular act or practice was unfair or deceptive. The parties take substantially divergent views on this point. For example, in briefings plaintiff repeatedly references specific instances of harm caused by defendant and advocates that the

8

court view defendant's conduct, as found by the jury, in the larger "context" of the dealings between the parties. By contrast, defendant argues that the court should look only to the single fact found by the jury in reaching its verdict, and the evidence presented at trial that supports the jury's finding.

"Ordinarily, once the jury has determined the facts of a case, the court, based on the jury's findings, then determines, as a matter of law, whether the defendant engaged in unfair or deceptive practices in or affecting commerce." S. Atl. Ltd. P-Ship of Tenn. v. Riese, 284 F.3d 518, 529 (4th Cir. 2002) ("S.A.L.T.") (quoting Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000)); accord Ellis v. N. Star Co., 326 N.C. 219, 227 (1990). It is essential that the court rely only on the facts found by the jury, because to engage in judicial finding of fact would invade the province of the jury. Cf. Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000) (noting that post-trial determination as to whether facts found by the jury are or are not unfair or deceptive acts or practices does not invade province of jury); Ellis, 326 N.C. at 226. Accordingly, plaintiff's position as to the appropriate scope of review must be rejected as inconsistent with established precedent.

1.      Defendant's Conduct was not "In or Affecting Commerce"

To be entitled to the UDPA's remedies, plaintiff first must show defendant's conduct falls within the statutory framework, including that the conduct was in or affecting commerce. HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 592 (1991). Although "commerce" usually "comprehends intercourse for the purpose of trade in any form," Sara Lee, 351 N.C. at 32, that is not true under the UDPA. By statute, "commerce" is limited to "business activities," N.C. Gen. Stat. § 75–1.1(b), and that term has been narrowed further in view of the statute's ultimate goal, "to benefit consumers." HAJMM, 328 N.C. at 592; accord Pearce v. Am. Def. Life Ins. Co., 316 N.C. 461, 469 (1986). "Business activities" are defined as "the manner in which businesses conduct their regular,

9

day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." <u>HAJMM</u>, 328 N.C. at 594.

Because of the statute's consumer-oriented goals, it affords broad relief to individual consumers aggrieved by unfair or deceptive practices. <u>Marshall v. Miller</u>, 302 N.C. 539, 542–44 (1981). However, courts have viewed the rights of businesses to sue other businesses for violations of the UDPA with a much more skeptical eye. <u>See</u> <u>United Labs., Inc. v. Kuykendall</u>, 322 N.C. 643, 665 (1988); <u>Winston Realty Co. v. G.H.G., Inc.</u>, 314 N.C. 90, 97–98 (1985). As derived from the case law, the statute gives a business a cause of action against another business only where: 1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, <u>see</u> <u>Kuykendall</u>, 322 N.C. at 665; <u>Winston</u>, 314 N.C. at 97–98, 2) the businesses are competitors, <u>see</u> <u>ITCO Corp. v. Michelin Tire Corp.</u>, 722 F.2d 42, 48 (4th Cir. 1983), or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public. <u>See</u> <u>Food Lion, Inc. v. Capital Cities/ABC, Inc.</u>, 194 F.3d 505, 519–20 (4th Cir. 1999).

In light of the facts found by the jury, there is no indication that the calls were made "in or affecting commerce" as required by the statute. Nor can the court extrapolate from the jury's findings and infer such a relationship, as the jury's lone finding addressed the existence of the calls themselves and the fact that defendant used, on occasion, fake names. Moreover, the calls could not have been "in or affecting commerce." It is undisputed that the calls were not made in the course of a commercial relationship, or for the purpose of engaging in consumer activity. Rather, the calls started only once defendant began to suspect plaintiff of trademark infringement.[3]

---

[3] The court briefly turns its attention to plaintiff's oral motion for judgment as a matter of law. Plaintiff contends that defendant failed to present sufficient evidence from which a reasonable jury could find that plaintiff infringed defendant's trademark. DirecTV's trademark infringement counterclaim required it prove 1) it possesses a mark; 2) Exclaim used the mark; 3) Exclaim's use of the mark occurred in commerce; 4) Exclaim's use of the mark

Nevertheless, plaintiff argues that the calls were made with the intent of harming its business, and that such intent should suffice to classify defendant's acts as affecting commerce, where defendant's conduct actually had a negative effect on plaintiff's business. However, again, the jury never was asked to find that defendant possessed such intent. In addition, even assuming defendant intended its calls to harm plaintiff's business, the UDPA "is not intended to apply to all wrongs in a business setting." HAJMM, 328 N.C. at 593. When there is no business, competitive, or consumer relationship between two business entities a business tort only "affects commerce" where the defendant's actions have a negative effect on the consuming public. See id.; White v. Thompson, 196 N.C. App. 568, 573 (2009), aff'd 364 N.C. 47 (2010); see also Food Lion, 194 F.3d at 520; Marshall, 302 N.C. at 548.

At trial, plaintiff did not demonstrate that defendant's actions had a direct and negative impact on its clients. The harmful effects of defendant's calls asserted by plaintiff in briefing only show, at most, that defendant's conduct created problems within plaintiff, as well as caused costs for third party satellite retailers with which plaintiff had a contractual relationship. With regard to plaintiff's internal problems, tensions caused by defendant's conduct did not have a negative impact on plaintiff's clients. Although plaintiff presented evidence that it incurred costs as a result of

---

occurred in connection with the sale, offering for sale, distribution, or advertising of goods or services; and 5) Exclaim used the mark in a manner likely to confuse consumers as to the course or origin of the goods or services. People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001).

The parties stipulated to elements 1 and 3. (Pretrial Order, DE 163, 1–2). Upon review of the record, the court concludes the remaining three factors also were met. At trial the evidence suggested that plaintiff had purchased numbers using variations of defendant's trademark, and also that plaintiff had corresponded with Verizon about certain telephone listings, asking Verizon to correct or change spellings of "DirecTV" as to two phone listings. (See, e.g., Day 3 Tr., DE 199, 56:17–57:24; see also Day 2 Tr., DE 198, 84:2–91:19; Def.'s Ex. 32). This evidence satisfies the use and use in connection with the offering or advertising of services requirement. In addition, the evidence showed that plaintiff received phone calls at the various listings from consumers who believed they were connecting to defendant. (See Day 5 Tr. 35:18–38:19; see also Day 2 Tr. 107:3–18). Because defendant presented sufficient evidence as to all five elements of its claim, plaintiff's motion for judgment as a matter of law is DENIED.

defendant's actions, mainly resulting from an initiative to retrain plaintiff's employees to handle defendant's calls, there was no evidence to suggest that these localized disputes affected its ability to fulfill its obligation to its clients, namely transferring calls made by those inquiring about satellite television services. Even with defendant's numerous calls, plaintiff had the capacity to handle an even greater volume of calls. (Day 4 Tr., DE 200, 176:3–17). Because defendant's conduct ultimately did not affect the third-party retailer's expectation of being forwarded calls inquiring about defendant's services by plaintiff, no harm to the consuming public was done based simply on the fact the calls caused internal tension or placed a greater burden on plaintiff's call center.

In any event, defendant's actions also did not have a negative effect on plaintiff's clients solely because it resulted in lost profits or increased costs to such clients. When no business, competitive, or consumer relationship exists between two parties, the "commerce" element of the UDPA is met only where defendant's actions have a net negative effect on the market of potential consumers. See Food Lion, 194 F.3d at 520 ("However, the deception . . . did not harm the consuming public. Presumably, [plaintiff] intended to benefit the consuming public by letting it know about [defendant's] food handling practices."). That was not the case here. Rather, defendant's conduct had a net positive effect on plaintiff's clients. Although plaintiff received complaints about defendant's "bogus" calls, (Day 1 Tr., DE 167, 68:12–24), other testimony at trial suggests defendant's calls were a boon to plaintiff's clients.

The calls were made in the course of defendant's investigation into plaintiff's infringement of its trademark. Those calls enabled defendant to learn the identity of the retailers working with plaintiff. After learning their identity, defendant was able to contact those retailers and inquire about whether they knew plaintiff was using potentially infringing listings. This practice allowed

12

uninformed retailers to sever their relationship with plaintiff, without being subject to litigation or losing their rights to distribute defendant's product. (Day 5 Tr. 149:1–165:7). Given that defendant's conduct actually benefitted plaintiff's clients, the calls to the infringing listings did not have the requisite negative effect on plaintiff's clients necessary to constitute conduct "affecting commerce." Thus, although defendant's calls may have cost plaintiff's clients in the moment, it hardly can be argued that the net effect of defendant's conduct was negative, where otherwise it could have resulted in much more grievous loss.

In sum, plaintiff's damages award must be vacated and defendant's motion for judgment as a matter of law granted. The parties were not engaged in "business activities" and thus defendant's conduct was not "in or affecting commerce." The calls did not take place in the context of a business, competitive, or consumer relationship. In addition, there is no indication that defendant's actions harmed the broader consuming public.

2.      Defendant's Conduct was not Unfair or Deceptive

In any event, defendant's motion also must be granted because the conduct found by the jury does not amount to an "unfair or deceptive" act or practice. The UDPA generally prohibits "unfair or deceptive" acts or practices. N.C. Gen. Stat. § 75–1.1(a). That language generally covers five broad categories of conduct: 1) unfair conduct, 2) deceptive misrepresentations, 3) anti-competitive conduct, 4) certain per se violations of the statute, and 5) breaches of contract occurring under aggravating circumstances. Sparks v. Oxy-Health, LLC, __ F. Supp. 3d. __, No. 5:13-CV-649-FL, slip op., at *51 (E.D.N.C. Sept. 15, 2015).

Potentially at issue in this case are the first three categories: unfair, deceptive, and anti-competitive conduct. Conduct is "unfair" when it "offends public policy . . . [or] is immoral,

unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 72 (2007). Conduct amounts to a deceptive misrepresentation where it has the capacity or tendency to deceive the average person. Gilbane, 80 F.3d at 902; Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 265 (1980), abrogated on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559 (1988). Conduct is "anti-competitive" where it amounts to an unfair use of market power to harm the competitive process and thereby harm consumers. Dickson v. Microsoft Corp., 309 F.3d 193, 206 (4th Cir. 2002); see also ITCO Corp., 722 F.2d at 48. In all cases, the UDPA only applies where egregious or aggravating circumstances are proved. Dalton, 353 N.C. at 657; see also Allied Distribs., Inc. v. Latrobe Brewing Co., 847 F. Supp. 376, 379 (E.D.N.C. 1993). The court considers defendant's conduct as either unfair, deceptive, or anti-competitive, and rejects each characterization in turn.

a.    Unfair Practices

Unfair conduct is that which a court of equity would find unfair. S.A.L.T., 284 F.3d at 535. The fact of 175 calls over a six year period, sometimes using false names, is not "unfair" for purposes of the UDPA. Without more factual specificity in the jury's verdict, it is impossible to glean any unfairness from the simple fact of the telephone calls. Even under the facts propounded by plaintiff, that defendant's calls caused significant problems both with its various distributors and internally, defendant's conduct was not inequitable in view of the fact that defendant was investigating plaintiff's willful infringement of its trademark. (Day 5 Tr. 161:23–163:5). Although plaintiff argues defendant's conduct amounted to an "inequitable assertion of power," citing S.A.L.T., 284 F.3d at 532, that is not true. Defendant called publically available telephone listings 175 times over a six-

year period. No superior degree of power or advantageous market position was leveraged in making those calls. The numbers were publically available and could have been called by anyone.

Plaintiff suggests the court must view defendant's conduct in the "larger context" of the parties' relationship, citing Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC, 2003 NCBC 4, 2003 WL 21017456, at *50 (N.C. Super. Ct. May 2, 2003). As an initial matter, the court does not find persuasive the unpublished opinion of the North Carolina Business Court in light of binding precedent directing the inquiry be limited to the facts found by the jury. See S.A.L.T., 284 F.3d at 536–541; id. at 541–42. The only "context" entitled to consideration is that provided by the facts found on the jury's verdict form, adopted by this court as requested by plaintiff. See id. Plaintiff provided no context in the verdict form and cannot now be heard to argue for such. In any event, the "context" in which defendant's actions occurred makes clear that the calls were a result of defendant investigating plaintiff's willful infringement of its trademark. In that light, defendant's conduct hardly can be considered unfair.

Moreover, there were no egregious circumstances surrounding defendant's calls. The total calls placed by defendant represents only 0.002958% of the total volume of calls handled by plaintiff's call center over the relevant time period. (See Pl.'s Ex. 74, DE 211-2; Def.'s Ex. 1140, DE 211-3, 15). At trial, plaintiff's expert testified that the number of calls made by defendant was "[p]robably not" significant, and that plaintiff had the capacity to handle more calls. (Day 4 Tr. 176:3–17). It is difficult to conceive how defendant's conduct could be unfair given the fact that plaintiff could have handled more calls, and thus was not required to turn any potential customer away. In addition, even though plaintiff contends that defendant's calls harmed its business relationship with its clients, because plaintiff's clients paid for the calls transferred from plaintiff and

15

defendant's calls never resulted in a sale, defendant's conduct cannot be unfair because there is no guarantee that any call forwarded to plaintiff's clients would have resulted in a sale. This is especially true in light of the infinitesimal number of calls actually transferred. (See Pl.'s Ex. 74, at 4–11).

Plaintiff argues that any single call by defendant that resulted in a client canceling its business relationship with plaintiff is sufficient ground to support a UDPA claim. It is not. First, it is speculative to assume that any given call placed by defendant would result in a lost business relationship. In addition, to the extent plaintiff grounds its argument in comments made by defendant during the course of any transferred call, those comments cannot form the basis of plaintiff's UDPA claim. All the statements at issue in this case, which were communicated to third parties, were found to be not actionable by virtue of defendant's qualified privilege.

Finally, defendant's conduct is not unfair because any unfairness reasonably could have been avoided. See In re Int'l Harvester Co., 104 F.T.C. 949, 1984 WL 565290, at *91 (F.T.C. 1984); see also Johnson, 300 N.C. at 262 ("The language of [the UDPA] closely resembles that employed by Section 5(a)(1) of the Federal Trade Commission Act . . . . Because of the similar language, it is appropriate for us to look to the federal decisions interpreting the FTC Act for guidance in construing the meaning of [the UDPA]."); Hardy v. Toler, 288 N.C. 303, 308 (1975). Liability for an unfair practice will attach only where the consumer, as a practical matter, is subjected to the practice by forces beyond its control. See F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1158 (9th Cir. 2010); Am. Fin. Servs. Ass'n v. F.T.C., 767 F.2d 957, 976 (D.C. Cir. 1985). The unfair practice alleged by plaintiff occurred solely as a result of plaintiff's willful trademark infringement. Thus, any negative effect was wholly avoidable, and defendant cannot be held liable under these facts.

b.    Deceptive Misrepresentations

A practice is deceptive if it has the "capacity or tendency to deceive" the average consumer. Johnson, 300 N.C. at 265–66.  However, a misleading practice alone, although necessary, is not sufficient to prove a violation of the UPDA.  To be "deceptive" within the meaning of § 75–1.1, a misleading act must occur under egregious or aggravating circumstances, and the harm resulting from the alleged deceptive practice must be such that the plaintiff could not reasonably avoid it.  See Dalton, 353 N.C. at 657; Hardy, 288 N.C. at 308; see also Int'l Harvester, 1984 WL 565290, at *91.

Proper analysis of defendant's allegedly deceptive conduct again requires a parsing of the facts.  The single fact found by the jury is that defendant called plaintiff in excess of 175 times over a six year period, at times using false names.  In and of themselves, the calls to plaintiff's call center were not deceptive.  Regardless of the name used by the caller, whether it be the caller's true name or even defendant's trade name, the calls still would have occurred.  Thus, the fact of the calls involves no deception.

Notwithstanding the limited jury findings, plaintiff suggests defendant's conduct was deceptive because the caller's failure to identify themselves as defendant's agents deceived plaintiff into transferring those calls to its clients, resulting in strained or cancelled business relationships. However, even though defendant's conduct may have been misleading, it was not "deceptive" within the meaning of the UDPA, because it was not accompanied by aggravating circumstances.  Dalton, 353 N.C. at 657 ("[S]ome type of egregious or aggravating circumstances must be alleged before the [UDPA takes effect].").   To the contrary, testimony presented at trial suggests that the callers' use of a pseudonym was critical to defendant's ultimate goal: sussing out the extent of plaintiff's willful

trademark infringement and informing those retailers affected by plaintiff's infringing listing of that fact, or otherwise investigating retailer compliance issues. (See Day 5 Tr. 149:1–165:7).

Although good faith is no defense to a UDPA claim, Marshall, 302 N.C. at 548–49, defendant's subjective belief is not at issue here. Rather, the circumstances of this case demonstrate a lack of egregiousness. The undisputed facts show that defendant's calls to the infringing listings began as a result of its investigation into plaintiff's willful misuse of its trademark. As part of that investigation, defendant needed to connect with plaintiff's clients to gauge the extent of plaintiff's infringement, as well as identify which of those retailers associated with plaintiff. (See Day 5 Tr. 162:15–165:7). Testimony received at trial indicates that use of a false name was an effective means of accomplishing this investigation. (See id. 160:21–161:22).

In any event, the negative effects of defendant's conduct reasonably could have been avoided. The undisputed facts show that defendant's calls began and persisted only as a result of plaintiff's willful infringement of defendant's trademark. Because plaintiff could have avoided any negative effect through proper respect for defendant's intellectual property rights, plaintiff cannot now recover for the adverse consequences flowing from defendant's investigation into plaintiff's conduct. Accordingly, because defendant's conduct occurred without egregious or aggravating circumstances, and because the negative effects of defendant's conduct were reasonably avoidable, the court holds that under the facts of this case, defendant's conduct was not deceptive within the meaning of § 75–1.1(a).

18

c.    Anti-Competitive Conduct

Finally, plaintiff suggests defendant's conduct is actionable because it amounts to "anti-competitive" conduct. Typically, anti-competitive conduct is similar in nature to that conduct which could give rise to a violation of the Sherman Act, 15 U.S.C. §§ 1 through 38. See ITCO Corp., 722 F.2d at 48. Although violation of the Sherman Act is sufficient to give rise to a UDPA claim, it is not necessary. See ITCO Corp., 772 F.2d at 48; Gray, 352 N.C. at 71 (plaintiff need not prove a technical violation of a statute regulating trade to give rise to UDPA claim, where defendant's conduct substantially violates statute). To determine if conduct is anti-competitive, courts examine the effect of the conduct on the competitive process, which in turn harms consumers. See Dickson, 309 F.3d at 206.

Once again, the facts found by the jury do not suggest any relationship between defendant's conduct and the competitive process. The lack of findings on a connection between defendant's conduct and the competitive process alone is a sufficient basis to grant defendant's motion. In any event, defendant's motion still must be granted, because defendant's efforts to protect its trademark are not anti-competitive. To the contrary, defendant's actions fostered competition and strengthened the market. The effect of defendant's conduct was to reduce likely confusion among end-consumers who wanted to purchase satellite television. (See Day 5 Tr. 35:18–38:19; see also Day 2 Tr. 107:3–18). Because defendant acted toward reducing consumer confusion, thereby increasing the amount of accurate information available in the market, as well as consumer power, defendant's conduct was not anti-competitive.

Nevertheless, plaintiff argues that defendant's conduct was anti-competitive because it failed to work collaboratively with plaintiff toward an agreeable resolution for both parties, despite having

19

the contacts necessary to facilitate such a resolution. Although plaintiff may have perceived defendant's conduct as violative of professional decorum, it is not this court's role to second guess defendant's business judgment. Rather, the single question for the court is whether defendant's conduct was an unfair or deceptive act or practice. Because defendant's conduct was not accompanied by egregious or aggravating circumstances, because the ill-effects suffered by plaintiff were reasonably avoidable, and because defendant's conduct worked to benefit consumers, the answer to that question is "no."

3.  Calls to Generic Numbers

The preceding discussion addresses calls made to infringing listings only. Plaintiff makes much of phone calls received at "generic" listings from both Haley and KDA, which it argues is evidence of defendant's mal-intent with regard to all 175 phone calls over a period of six years. Plaintiff's argument is not entitled to great weight for a number of reasons. First, there is no jury finding parsing out defendant's calls to "infringing" versus "generic" listings on the verdict sheet. In fact, the evidence shows that some numbers were used in both generic and infringing listings. (Day 2 Tr. 102:22–103:1). Plaintiff never presented additional evidence isolating defendant's calls to a particular ad. (See, e.g., id. 100:17–24). Thus, even assuming all calls received by plaintiff were made to a number used in a "generic" listing, that still is not sufficient evidence to allow the court to draw the inference that defendant obtained the number from a generic listing.

In addition, although there is evidence both Haley and KDA were connected to retailers selling exclusively Dish Network products, that fact alone is insufficient to support the inference that defendant called plaintiff's call center on a number obtained from a generic listing. (Pl.'s Ex. 74) (listing calls transferred to "Dish Network" or some variant thereof). The telemarketer who received

the call was not able to determine whether the call came in from a generic or infringing listing and never tried to steer the caller to one service over another. (See id. 101:12–19; 238:21–239:10; Day 3 Tr. 54:2–9). Although calls made by Haley or KDA transferred to Dish Network may have been a result of the caller's request, there is no affirmative evidence that was the case.

In any event, defendant's calls made to generic listings were neither unfair or deceptive nor in or affecting commerce, and thus are not actionable. The calls were not "in or affecting commerce" because plaintiff and defendant had no business, commercial, or consumer relationship. In addition, there was no net negative impact on the consuming public where the calls were made to check compliance issues with defendant's various retailers. (Day 5 Tr. 184:1–6). The calls were not "unfair or deceptive" because defendant's calls, made through Haley or KDA, to publically listed telephone numbers is neither inequitable, an unfair assertion of power, nor anti-competitive. The calls were not "deceptive" within the meaning of the statute because they were related to defendant's legitimate efforts to police retailer compliance. (See id.).

Plaintiff suggests defendant intended the calls to disrupt plaintiff's business. Although evidence that the calls were intended to disrupt plaintiff's business may give rise to a violation of the UDPA, there is no evidence of such intent here. First, there was no jury finding on the issue of intent. Instead, the jury was asked only to find the fact of the calls. In addition, inferring defendant's intent to disrupt plaintiff's business from the evidence presented at trial, at best, is tenuous. There was no way to identify plaintiff as the owner of any "generic" listing. (Day 2 Tr. 103:2–11). Moreover, although Haley admitted calling generic numbers, she did not know those numbers were owned by plaintiff. (Day 5 Tr. 184:7–10).

**CONCLUSION**

Based on the foregoing, defendant's first motion for judgment as a matter of law (DE 175) is DENIED as MOOT.   Plaintiff's oral motion for judgment as a matter of law is DENIED. Defendant's second motion for judgment as a matter of law (DE 209) is GRANTED, and the jury's award to plaintiff, in the amount of $760,000.00, is VACATED.   As a result, because defendant is not liable to plaintiff, plaintiff's motions for attorney's fees (DE 205) and  prejudgment interest (DE 207) are DENIED.

SO ORDERED, this the 30th day of September, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

22