IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-684-FL

| | |
|---|---|
| EXCLAIM MARKETING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| DIRECTV, LLC, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on defendant's motion for increased profits, made pursuant to 15 U.S.C. § 1117(a) and Federal Rule of Civil Procedure 50(b), or in the alternative for a new trial on the issue of profits pursuant to Federal Rule of Civil Procedure 59. (DE 219). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion is granted. The jury's award of $25,000.00 is increased and plaintiff's profits are disgorged in the amount of $610,560.00. Defendant's alternative motion for a new trial on the issue of profits is denied.

**BACKGROUND**

On October 28, 2011, plaintiff, Exclaim Marketing, LLC ("Exclaim"), a marketing company engaged in the business of connecting consumers with retailers of satellite television, initiated this suit in the Wake County, North Carolina, Superior Court, against defendant, DirecTV, LLC ("DirecTV"), a provider of satellite television, alleging numerous causes of action arising out of DirecTV's alleged attempts to interfere with Exclaim's business relationships with various of DirecTV's third-party retailers for whom Exclaim was marketing their products. On December 1,

2011, DirecTV removed this matter to this court pursuant to 28 U.S.C. §§ 1332 and 1441. Thereafter, DirecTV asserted against Exclaim a counterclaim for trademark infringement, arising from Exclaim's use of DirecTV's mark "DirecTV," in violation of the Lanham Act, 15 U.S.C. § 1114.

The court summarizes the following facts pertinent to the instant motion. Plaintiff owned approximately 10,000 unique phone numbers, 6,000 of which it used to market satellite television. Those 6,000 numbers were listed in various phone books in differing capacities. Some were "generic" listings, shown as being owned by "National Call Center" or advertising "satellite television," generally. Others were "branded," meaning they were associated with DirecTV's trademark, "DirecTV," or the mark of its major competitor, Dish Network. Often phone numbers were associated with multiple listings, sometimes being associated with both generic and branded listings. DirecTV's counterclaim is grounded in those listings bearing its trademark. Although DirecTV never gave Exclaim permission to use that mark, Exclaim owned in excess of 200 listings, associated with at least 159 unique phone numbers, bearing DirecTV's mark.

DirecTV's counterclaim proceeded to trial on November 13, 2014. Prior to trial, DirecTV submitted to the court a proposed jury instruction as to the proper method of calculating Exclaim's profits owing from its infringing actions, as allowed under 15 U.S.C. § 1117(a).[1] (DirecTV's Proposed Jury Instructions, DE 153, 33). Finding that instruction to be well founded, the court adopted it as its own and instructed the jury:

> DIRECTV is entitled to any profits earned by EXCLAIM that are attributable to the infringement. DIRECTV has the initial burden of proving, by a preponderance of

---

[1] 15 U.S.C. § 1117(a) also allows DirecTV to recover actual damages caused by plaintiff's conduct. DirecTV did not request a jury instruction on damages, and, despite the jury's characterization of its award as "nominal damages," it is clear that DirecTV does not consider the $25,000.00 to be an award of damages.

2

> the evidence, EXCLAIM's gross sales revenue resulting from the infringement. EXCLAIM then has the burden of proving, by a preponderance of the evidence, the amount of expenses that should be deducted from gross sales revenue to determine profit, and any portion of its profit it alleges is attributable to factors other than use of the infringing mark. Unless you find that a portion of EXCLAIM's profits from the sale of calls from telephone directory listings using the infringing mark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.

(Jury Instructions, DE 190, 28).

At trial, DirecTV presented evidence that plaintiff's total revenues for the relevant time period were $12,587,989.05. DirecTV further presented evidence that Exclaim's total costs were $5,864,467.41, for a total profit of $6,723,521.64. In its defense, Exclaim presented evidence that each phone number generated gross monthly revenue of approximately $125.00, which resulted in a net monthly profit of $75.00 to $80.00. Neither party presented revenue or profit figures specifically tailored to the listings bearing DirecTV's mark. After trial, the jury returned a verdict awarding DirecTV $25,000.00 on its trademark infringement claim.

On January 26, 2015, DirecTV filed the instant motion. Therein, it argues that the jury misapplied the law and that the court should award it $6,723,521.64, representing Exclaim's total profits. In particular, DirecTV argues that by statute it only was required to prove Exclaim's total revenues and that thereafter the burden was on Exclaim to parse out specific items of revenue and costs not attributable to its infringement. In response, Exclaim argues that increasing the jury's award is not warranted, where the jury was presented with ample financial information, and, in any event, an increased award would result in a windfall to DirecTV.

## COURT'S DISCUSSION

A.   Standard of Review

When a party is heard fully on an issue at trial, and, in view of the evidence presented, the court finds that a reasonable jury would not have a legally sufficient basis to find in favor of that party, the court may grant judgment for the opposing party as a matter of law. Fed. R. Civ. P. 50(a)(1). Where a motion for judgment as a matter of law is made during trial but not decided, or where the movant otherwise raises an objection as to the sufficiency of the non-movant's evidence the court may consider those issues after the jury has returned its verdict. Id. 50(b). A motion for judgment as a matter of law may be granted if the court "determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999). The court is to draw all evidence in the light most favorable to the prevailing party and draw all reasonable inferences in that party's favor. See Austin v. Torrington Co., 810 F.2d 416, 420 (4th Cir. 1987).

B.     Analysis

After a trial on the merits, the jury awarded DirecTV $25,000.00 on its trademark infringement claim, representing Exclaim's profits accruing from its infringement. DirecTV now argues that the court should set aside the jury's verdict, and, instead, award it $6,723,521.64, representing Exclaim's total profits from January 2009 to December 2012. DirecTV contends Exclaim failed to adduce credible evidence demonstrating that any portion of the more than six million dollars DirecTV now seeks was attributable to a revenue stream not generated by Exclaim's infringing conduct. Essentially, DirecTV takes the position that § 1117(a) entitles it to the presumption that all of Exclaim's profits were attributable to its infringement, subject to Exclaim rebutting that presumption to the extent possible.

Before turning to DirecTV's argument, a discussion of the Lanham Act's damages provision

4

will facilitate understanding of the court's analysis. Section 1117(a) allows a successful claimant to recover 1) "the defendant's profits based simply on proof of the defendant's sales"; 2) the plaintiff's damages; 3) court costs; and 4) in exceptional cases, attorneys fees. Ga.-Pac. Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 717 (4th Cir. 2015). Where recovery is based on defendant's profits, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Once the jury awards profits consistent with the evidence adduced under that burden-shifting proof structure, the court then may determine that the amount awarded by the jury is either inadequate or excessive and "may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). If the court increases plaintiff's recovery, whether such increase be in the form of profits or damages, the amount awarded is not penal in nature. Id.; von Drehle, 781 F.3d at 717–18. Rather, the award is compensatory where it furthers the goals of the Lanham Act, avoiding unjust enrichment, recompense to the injured plaintiff, or deterrence. See 15 U.S.C. § 1117(a); see also Masters v. UHS of Del., Inc., 631 F.3d 464, 474 (8th Cir. 2011); Playboy Enters., Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1274 (9th Cir. 1982); Black & Decker (U.S.), Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 855 (E.D. Va. 1998).

The court's statutory authority to "enter judgment . . . according to the circumstances of the case" affords wide discretion under which the court may enter judgment in an amount greater than, less than, or consistent with the jury's award, or, if the equities so dictate, the court may award nothing at all. See 15 U.S.C. § 1117(a) (noting any award is "subject to the principles of equity"). "[I]n assessing the issue of damages under 15 U.S.C. § 1117(a), [the court] should weigh the equities of the dispute and exercise its discretion on whether an award is appropriate and, if so, the amount

5

thereof." Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 176 (4th Cir. 2006). In balancing the equities, the Fourth Circuit has instructed district courts to apply a non-exclusive list of six factors: 1) whether the defendant had the intent to confuse or deceive, 2) whether sales have been diverted, 3) the adequacy of other remedies, 4) any unreasonable delay by plaintiff in asserting its rights, 5) the public interest in making the misconduct unprofitable, and 6) whether the case involves "palming off." Id. at 175.

DirecTV's objection to the jury's verdict stems from, what it perceives as, the jury's misapplication of the burden of proof. Specifically, it argues there was no credible evidence to rebut its proof of Exclaim's revenues. The Fourth Circuit previously has suggested that a similar statute, assessing damages for copyright violations, only requires the claimant to demonstrate the infringer's total revenues, even where those revenues are not related to the infringing act. See Konor Enters., Inc. v. Eagle Pubs., Inc., 878 F.2d 138, 140 (4th Cir. 1989) (discussing 17 U.S.C. § 504(b)); see also Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 63–64 (1st Cir. 2008). Compare 17 U.S.C. § 504(b), with 15 U.S.C. § 1117(a) and Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205–07 (1942) (interpreting identically worded predecessor statute to § 1117(a)). However, the court went on to note that in certain cases where "it is clear that not all of the infringer's profits are attributable to the infringement . . . the . . . standard has not been strictly followed." Konor, 878 F.2d at 140; see also Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826, 828–29 (9th Cir. 1985) (awarding $5,000.00 under 17 U.S.C. § 504(b), even though defendant's total revenues were $4,876,000.00, where it was clear a majority of defendant's total revenues were unrelated to the infringing act).

It would be inequitable to award DirecTV the entirety of Exclaim's profits over the relevant

period. DirecTV demonstrated in excess of 257 discrete instances of trademark infringement. However, there is no evidence as to the total number of listings Exclaim owned or how profitable those listings were. Rather, the only evidence as to the profitability of Exclaim's infringement is its profits earned from phone numbers associated with those infringing listings, which is a reasonable proxy for the total amount of damages associated with those listings. Exclaim owned 6,000 unique phone numbers associated with its satellite television marketing. Of those 6,000 unique numbers, the evidence credibly shows that only 159 were associated with infringing listings, meaning Exclaim had about 5,841 phone numbers not associated with DirecTV's mark in any way.[2] Given that 97.35% of numbers owned by Exclaim were not associated with DirecTV's mark, equity disfavors awarding DirecTV all monies earned by Exclaim, regardless of source. Accordingly, DirecTV is not entitled to the $6,723,521.64 it seeks.[3]

Nevertheless, DirecTV is entitled to an increased award of profits. Even though an award of $6,723,521.64 would be inequitable, by presenting evidence of Exclaim's total revenues, $12,587,989.05, DirecTV met its burden of proof under the statute. See 15 U.S.C. § 1117(a); see also Venture Tape, 540 F.3d at 63–64; Konor, 878 F.2d at 140. By statute then, the burden shifted to Exclaim to parse out costs and expenses associated with its legitimate business, as well as its use of listings bearing DirecTV's mark not attributable to the mark itself, to assist the jury in fashioning an appropriate award. However, rather than introduce evidence suggesting its infringing listings

---

[2] Plaintiff admits owning 29 unique numbers. (Def.'s Ex. 174). In addition, there was evidence at trial which linked plaintiff to 130 other unique numbers. (See Def.'s Exs. 225 & 233).

[3] To the extent the court is required to balance the Synergistic factors in support of this determination, they do not weigh in favor of granting DirecTV the $6.7 million it requests. Although Exclaim's infringement was willful, as is discussed more fully herein, an award of $6,723,521.64 is excessive, and in fact may be punitive, in light of the actual damages claimed and proved by DirecTV.

7

were less profitable, or that customers would have called the numbers used in the infringing listings notwithstanding the use of DirecTV's mark, Exclaim presented evidence only that its average profit per month per phone number was between $75.00 and $80.00. (Day 6 Tr., DE 202, 218:14–219:18).

Because DirecTV showed 159 of those phone numbers were associated with infringing listings, it is entitled to Exclaim's profits at least in the amount of $610,560.00. This represents the total quantity of phone numbers with which plaintiff was linked at trial, multiplied by the profitability of those numbers over the applicable period. DirecTV seeks profits for 48 months, January 2009, through December 2012. The court assumes Exclaim earns $80.00 per month per phone number, given its admission of that fact at trial. Although the financial information submitted by DirecTV may suggest a contrary result, § 1117(a) places the burden of parsing out costs and other expenses on the infringer. Here, Exclaim presented no evidence other than the $80.00 per line per month figure.

The Synergistic factors favor this award. The "willfulness" factors weights in favor of an increased award. The jury found Exclaim's conduct was willful. "[W]illfulness is a proper and important factor in an assessment of whether to make a damages award." Synergistic, 470 F.3d at 175. The third factor, adequacy of other remedies, also weighs in favor of increasing the award. In Synergistic the court noted that the availability of injunctive relief weighs against an award of damages. Id. at 176. Here, by contrast, the court has awarded profits, not damages. Any prospective injunction will not remedy Exclaim's usurpation of the good will associated with DirecTV's mark for the period at issue. See PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 127 (4th Cir. 2011). The fourth factor, lack of unreasonable delay, also weighs in favor of increasing DirecTV's award. Although the record indicates that DirecTV learned of general

8

infringement on its mark in late 2007, it also evidences a period of investigation, which was necessary to ascertain Exclaim's identity, as well as a period of attempted reconciliation. Given that, the approximately four-year delay between DirecTV's first knowledge of infringement, and it ultimately filing suit was not unreasonable. Finally, the jury's profit award is inadequate to make Exclaim's infringement unprofitable, and thus the fifth factor favors an increased award. Where the jury's award would allow Exclaim to retain some profit associated with its use of DirecTV's mark, that award is inadequate to nullify the monetary benefit of the infringement.

C.  DirecTV's Alternative Motion for a New Trial

DirecTV moves, in the alternative, for a new trial on the issue of profits. Here, DirecTV did not request actual damages, but, rather, only requested an equitable accounting. (Def.'s Proposed Jury Instructions, 33; see also Jury Verdict as to DirecTV, DE 185, 2). Given the equitable nature of an accounting, there is no Seventh Amendment right to a jury trial as to that source of recovery. See, e.g., Chauffers, Teamsters and Helpers v. Terry, 494 U.S. 558, 571 (1990); Tull v. United States, 481 U.S. 412, 424 (1987); Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1075–76 (9th Cir. 2015); cf. Gnossos Music v. Mitken, Inc., 653 F.2d 117, 120–21 (4th Cir. 1981) (no jury trial required on equitable claims).

Where the court already has determined the amount of profits to which DirecTV is entitled in accordance with the appropriate equitable considerations, a new trial would serve no purpose. DirecTV's motion for a new trial is DENIED.

**CONCLUSION**

Based on the foregoing, DirecTV's motion inasmuch as it seeks increased profits (DE 219)

9

is GRANTED.  The jury's $25,000.00, representing Exclaim's profits earned from its infringement of DirecTV's mark, is VACATED and the court awards $610,560.00.  DirecTV's motion, to the extent it requests a new trial on the issue of profits, is DENIED.

SO ORDERED, this the 30th day of September, 2015.

LOUISE W. FLANAGAN
United States District Judge