IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-684-FL

| | | |
|---|---|---|
| EXCLAIM MARKETING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DIRECTV, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for permanent injunction, made pursuant to 15 U.S.C. § 1116(a), (DE 216), as well as defendant's motion for attorney fees, made pursuant to 15 U.S.C. § 1117(a). (DE 212). The issues raised have been briefed fully and in this posture are ripe for ruling. For the reasons that follow, defendant's motion for permanent injunction is granted as modified herein and its motion for attorney fees is denied.

**BACKGROUND**

On October 28, 2011, plaintiff, Exclaim Marketing, LLC ("Exclaim"), a marketing company engaged in the business of connecting retail consumers with third-party resellers of satellite television, initiated this suit in the Wake County, North Carolina, Superior Court, against defendant, DirecTV, LLC ("DirecTV"), a provider of satellite television, alleging numerous causes of action arising out of DirecTV's alleged attempts to interfere with Exclaim's business. On December 1, 2011, DirecTV removed this matter to this court pursuant to 28 U.S.C. §§ 1332 and 1441. Thereafter, DirecTV asserted a counterclaim for trademark infringement, arising from Exclaim's unauthorized use of DirecTV's mark, "DirecTV," in its advertising, in violation of the Lanham Act,

15 U.S.C. § 1051 et seq..

The court summarizes the following facts pertinent to the instant motion. Plaintiff owned approximately 10,000 unique phone numbers, 6,000 of which it used to market satellite television. Those 6,000 numbers were listed in various phone books in differing capacities. Some were "generic" listings, shown as being owned by "National Call Center" or advertising "satellite television," generally. Others were "branded," meaning they were associated with DirecTV's trademark, "DirecTV," or the mark of its major competitor, Dish Network. Often phone numbers were associated with multiple listings, both generic and branded. DirecTV's counterclaim is grounded in those listings bearing its trademark. DirecTV never gave Exclaim permission to use its mark. However, Exclaim owned in excess of 200 listings, associated with at least 159 unique phone numbers, bearing DirecTV's mark.

DirecTV's counterclaim proceeded to trial on November 13, 2014. On November 24, 2014, the jury returned a verdict in DirecTV's favor, finding that Exclaim 1) infringed DirecTV's trademark, 2) did so "in a manner likely to cause confusion," and 3) did so "with the intent to confuse or deceive [the public]." (Jury's Verdict as to DirecTV, DE 185, 1–3).

On January 19, 2015, DirecTV filed the instant motions for permanent injunction and attorney fees. With regard to the first motion, DirecTV moves to permanently enjoin Exclaim from any further use of its mark. It argues that an injunction is proper because Exclaim's future use of its trademark will cause it irreparable injury which cannot be compensated adequately through money damages. To effectuate its proposed injunction, DirecTV requests the court compel Exclaim to search the universe of listings placed by it, or on its behalf, and request the listings infringing on the mark be removed. With regard to its motion for attorney fees, DirecTV argues that this case is

"exceptional," as is required for an award of reasonable fees under the Lanham Act, 15 U.S.C. § 1117(a), because the jury found Exclaim's infringement to be willful.

On February 9, 2015, Exclaim responded in opposition to both motions. As to the motion for injunction, Exclaim does not meaningfully contest DirecTV's entitlement to a permanent injunction. Rather, it focuses its argument principally on the scope of the proposed injunction, which it contends is not narrowly tailored and would grant DirecTV broader relief than that to which it is entitled. As to the motion for attorney fees, Exclaim argues that this case is not "exceptional," even in light of the jury's finding of willfulness, because an "exceptional" case is one in which bad faith or some degree of scienter is proved.

## COURT'S DISCUSSION

A.   Motion for Permanent Injunction

   1.   Standard for Injunctive Relief.

A party seeking a permanent injunction must satisfy a four-factor test establishing the propriety of an injunction before a court may grant such relief. eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). In particular, the movant must show: 1) that it has suffered an irreparable injury, 2) that remedies available at law, such as monetary damages, are inadequate to compensate it for that injury, 3) that, considering the balance of hardships between the parties, a remedy in equity is warranted, and 4) that the public interest would not be disserved by a permanent injunction. Id. In addition, any injunction must be narrowly tailored to the facts of the case. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011). An injunction is "narrowly tailored" when it is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]." Id. (citing Kentuckians for Commonwealth, Inc. v. Rivenburgh, 317 F.3d 425, 436 (4th

3

Cir. 2006).

2. Nature of the Injunction Sought

DirecTV requests an injunction that is prohibitory in part, and mandatory in part. As to the prohibitory component, DirecTV moves to enjoin "Exclaim, and its owners, members, agents, servants, successors, assignees, affiliates, and all persons or entities acting in concert or participation with Exclaim or controlled by Exclaim or its members or owners" from:

> 1. Using – or inducing, encouraging, or aiding others to use – the DIRECTV® trademark or any confusingly similar variations thereon (collectively, the "DIRECTV® Mark") in connection with any directory listing, whether in print, online, or in any other medium;
>
> 2. Engaging in any conduct with respect to the DIRECTV® Mark in connection with any directory listing, whether in print, online, or in any other medium, that is likely to confuse the public into believing Exclaim and/or its products or services are affiliated with or otherwise connected to DIRECTV;
>
> 3. Engaging in any other activity constituting infringement of the DIRECTV® Mark in connection with any directory listing, whether in print, online, or in any other medium.

(DE 216-1, 1–2). As to the mandatory component, DirecTV requests that the court order that within 30 days of the entry of any injunction, Exclaim:

> (a) transmit written communication requesting immediate removal of any directory listing infringing the DIRECTV® Mark that was placed by or is currently under the control of Exclaim to any entity operating a directory service – whether in print, online, or in another medium – publishing a listing placed or controlled by Exclaim and infringing the DIRECTV® Mark; and
>
> (b) file with the Clerk of this Court and serve on DIRECTV a report in writing and under oath setting forth in detail the

4

>    manner and form in which it has complied with this Permanent Injunction.

(Id. at 2).

   3.   Propriety of Injunctive Relief

DirecTV is entitled to its requested relief, as it has met all four elements required for the entry of a permanent injunction. First, DirecTV has demonstrated irreparable injury. Many courts of appeal have recognized that in trademark infringement cases "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 938 (4th Cir. 1995) (quoting Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 608 (6th Cir. 1991)); see also Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325, 1332 (7th Cir. 1977). Although the Fourth Circuit has not explicitly recognized such presumption, a number of district courts within this circuit have. See, e.g., E. W., LLC v. Rahman, 896 F. Supp. 2d 488, 505 (E.D. Va. 2012). Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd., 799 F. Supp. 2d 558, 579–80 (M.D.N.C. 2011); see also Mon Cheri Bridals, LLC v. P'ships, No. 3:15-cv-21, 2015 WL 3509259, at *5–6 (W.D.N.C. June 4, 2015). In light of the jury's finding of likely confusion, the court presumes irreparable injury. (See Jury's Verdict as to DirecTV, 1).

In any event, DirecTV presented sufficient evidence at trial to demonstrate irreparable injury. Potential loss of goodwill supports a finding of irreparable harm. Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994), abrogated on other grounds by Winter v. Nat'l Res. Def. Council, 555 U.S. 7 (2008); see also Am. Petroleum Inst. v. Cooper, 718 F.3d 347, 359 (4th Cir. 2013) ("The Lanham . . . Act affords the trademark holder the right of control the quality of the [services] sold under its trademark.") (first alteration in original).

5

Exclaim is associated with numerous infringing listings. These listings likely confuse consumers, causing them to call Exclaim when they intend to call DirecTV. Because DirecTV has no control over a given consumer's interaction with Exclaim, it is impossible for DirecTV to control the quality of services rendered under its name. This lack of control is sufficient to warrant a finding that the goodwill associated with DirecTV's mark potentially could be damaged. In addition, Exclaim's use of DirecTV's mark caused actual confusion. (See Day 5 Tr., DE 201, 35:18–38:19; see also Day 2 Tr., DE 198, 107:3–18). The existence of actual confusion supports DirecTV's request for injunctive relief, because "confusion may cause purchasers to refrain from buying [DirecTV's] product and turn to those [products] of other competitors." Helene Curtis, 560 F.2d at 1333.

DirecTV also has established the remaining factors. Any remedy at law necessarily is inadequate to compensate defendant for plaintiff's ongoing infringement. Although the court previously has awarded to DirecTV the profits of Exclaim, that relief only serves as recompense for past violations. The injunction is intended to remedy any ongoing or future violation of DirecTV's rights in its mark and to "prevent [Exclaim] from infecting the marketplace" further. See PBM Prods., 639 F.3d at 127. The balance of hardships also favors DirecTV. In light of the jury's conclusion that Exclaim willfully infringed DirecTV's trademark, Exclaim now cannot be heard to argue that some form of injunction as to its use of that mark would result in an undue hardship. By contrast, Exclaim's continued use of DirecTV's mark would harm DirecTV, because it would perpetuate uncertainty and potentially harm the goodwill associated with the mark. Finally, an injunction would serve the public interest in two ways. First, Exclaim's infringing listings deceived customers attempting to contact DirecTV, and, left unattended, likely will continue to do so. The injunction proposed by DirecTV would reduce the number of infringing listings and thus reduce the

potential for consumer confusion. Moreover, granting an injunction furthers the Lanham Act's purpose of "protecting persons engaged in commerce within the control of Congress against unfair competition." POM Wonderful LLC v. Coca-Cola Co., __ U.S. __, 134 S. Ct. 2228, 2234 (2014) (internal alterations and quotations omitted).

In sum, DirecTV has satisfied the four requirements necessary for an injunction to enter. The court presumes harm stemming from Exclaim's willful trademark infringement, or, in any event, concludes that DirecTV presented sufficient evidence of irreparable harm in the form of potentially diminished goodwill at trial. In addition, monetary damages are inadequate and DirecTV needs to be protected against future infringement; the balance of hardships favors DirecTV; and the public interest would be served by both eliminating confusing listings and furthering the purpose of the Lanham Act.

4. Scope of The Requested Relief

Exclaim does not dispute the propriety of injunctive relief in any meaningful way. Rather, it focuses its objections on the scope of the proposed injunction. Specifically, Exclaim contends the injunction is not narrowly tailored to the facts of the case, where it "requires that Exclaim contact all directory listing providers and request[] the immediate removal of any listings that Exclaim owns or controls that infringe DIRECTV's mark." (See Pl.'s Memorandum in Opposition, DE 232, 4; Def.'s Memorandum in Support, DE 217, 22). Exclaim proposes, as an alternative, an injunction that requires DirecTV to provide Exclaim with a list of numbers "that it contends may be listed using the DIRECTV mark," which would allow it to then "contact telephone providers to confirm whether the listings exist, and if so, to have them removed." (Pl.'s Memorandum in Opposition, 5).

Injunctive relief should be no more burdensome to the defendant than necessary to provide

7

complete relief to the plaintiff. Va. Soc. for Human Life, Inc. v. F.E.C., 263 F.3d 379, 393 (4th Cir. 2001) ("VSHL"), abrogated on other grounds, Winter, 555 U.S. at 7. Relief should be tailored to the circumstances of the case, meaning the court should "grant the full relief needed to remedy the injury to the prevailing party," without going "beyond the extent of the established violation." Hayes v. N. State Law Enf't Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993); accord VSHL, 263 F.3d at 393. However, the tailoring requirement does not preclude the court from entering a nationwide injunction where necessary. See Richmond Tenants Org., Inc. v. Kemp, 956 F.2d 1300, 1302, 1309 (4th Cir. 1992).

The injunction proposed by DirecTV satisfies the narrow tailoring requirement. At trial, and in much of their briefing, the parties refer to the quantity of unique phone numbers owned by Exclaim. However, although the quantity of phone numbers associated with infringing listings, in some sense, may serve as a convenient means of determining a threshold level of infringement, that measure does not accurately represent the extent of Exclaim's prohibited conduct. At trial, DirecTV presented credible evidence connecting Exclaim to a wide array of numbers. There is no way to fully account for the numerous phone book listings owned by Exclaim that use DirecTV's mark. The evidence shows that each number may be paired with multiple listings, placed in various locations all over the country. It is likely that DirecTV did not and cannot uncover the full extent of Exclaim's infringing actions. The difficulty in comprehending fully the scope of Exclaim's infringing actions weighs heavily in favor of DirecTV's proposed injunction.

A more narrow scope would deny DirecTV full relief. For example, Exclaim's counter-proposal would nullify the benefit of the injunction to which DirecTV is entitled and improperly shift the burden of enforcement to DirecTV. Exclaim highlights the overwhelming number of

8

Case 5:11-cv-00684-FL   Document 259   Filed 09/30/15   Page 8 of 15

sources in which a given listing could be placed, and argues that requiring it to search through these various sources would be overly burdensome. In effect, Exclaim contends that DirecTV should bear the burden of uncovering infringing listings and bringing those listings to Exclaim's attention. The court disagrees. As the aggrieved mark holder, DirecTV should not bear the burden of searching through numerous listings to uncover the extent of Exclaim's infringing actions. DirecTV has submitted evidence to suggest that the manpower necessary to conduct such extensive review would generate significant cost. To require DirecTV bear the time and cost necessary to effectuate an injunction in its favor would nullify any benefit to which DirecTV is entitled. Moreover, the court is not inclined to entertain Exclaim's counter-proposal where the very conduct necessary to effectuate it already was the subject of a lawsuit by Exclaim against DirecTV. (See Am. Compl., DE 31).[1]

Nevertheless, Exclaim contends that DirecTV's proposed injunction is inconsistent with reality, because it "does not publish any listings in any telephone books, and never has." (Pl.'s Memorandum in Opposition, 5). Rather, Exclaim contends, the true source of the infringing listings is inattention on the part of the phone companies from which it purchased its various numbers. In light of testimony at trial that phone companies rarely place listings with inaccurate information, (Day 6 Tr., DE 202, 85:8–25), and the dearth of credible evidence produced by Exclaim

---

[1] Exclaim asserted against DirecTV a claim under the North Carolina Unfair and Deceptive Practices Act ("UDPA"), N.C. Gen. Stat. § 75–1.1 et seq., grounded in several alleged defamatory statements and the fact that DirecTV called Exclaim's call center in excess of 175 times, sometimes using false names, over a six-year period. At trial, the jury found in DirecTV's favor on Exclaim's claim inasmuch as that claim was grounded in the allegedly false or defamatory statements. (See Jury's Verdict as to Exclaim Marketing, DE 184, 1–4). However, the jury found in Exclaim's favor as to its UDPA claim grounded in the fact of the calls. (Id. at 5). The jury awarded Exclaim $760,000.00. (Id.). After trial, defendant moved for judgment as a matter of law on Exclaim's claim, pursuant to Federal Rule of Civil Procedure 50(b). By order entered contemporaneously herewith, the court granted DirecTV's motion for judgment as a matter of law, holding that DirecTV's conduct was neither an "unfair or deceptive act or practice," nor "in or affecting commerce" as required for liability under the UDPA.

9

demonstrating that its numerous listings were a result of that rare oversight, the injunction proposed by DirecTV is appropriately tailored to the circumstances of the case.

Exclaim further argues the burden imposed by DirecTV's proposed injunction will harm its business, because it will necessitate a long and expensive process. That fact is of little concern. The time and expense necessary to comply with the court's order is a direct result of Exclaim's willful trademark infringement. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). In any event, Exclaim's concerns are lessened by the fact that it has undertaken such a review in the past, (Day 1 Tr., DE 167, 161:18–164:4), and any potential ill effects of the injunction further can be diminished through use of available third party services, which will undertake the necessary review on Exclaim's behalf. (See Declaration of Chris Jones, DE 252, ¶¶1–4).

Exclaim's briefing overstates the burden imposed by the proposed injunction. It does not, as Exclaim contends, require Exclaim to reach out to every directory company and demand the removal of all listing bearing DirecTV's mark. The injunction requires Exclaim to contact only those directory companies that placed infringing listings on its behalf, or on behalf of those phone companies that Exclaim contends ordered the infringing listings. The injunction does not leave Exclaim responsible for listings that have been "republished," that is, generated by third parties solely based on information gleaned from other listings. However, in recognition of the practical difficulties imposed by the injunction, the court expands the period of time in which Exclaim must come into come into compliance from 30 days to 180 days. This 150 day extension will allow sufficient time for Exclaim to police its listings, some of which it contends are unknown to it, and

10

remove any infringing content.

B.     Motion for Attorney Fees

DirecTV argues it is entitled to $1,290,973.67 in attorney fees, stemming from its counsel's work in this matter. It argues that this case meets the relevant standard for awarding attorney fees under the Lanham Act where the jury found that Exclaim used its trademark "with the intent to confuse or deceive." (Jury Verdict's as to DirectTV, 3). Exclaim raises two primary arguments in opposition. First, it argues that notwithstanding the jury's verdict, this case does not qualify for attorney fees. Second, it argues that, even if attorney fees are warranted, DirecTV's request is not "reasonable" as is required by statute.

The Lanham Act entitles the prevailing party to reasonable attorney fees in "exceptional" cases. 15 U.S.C. § 1117(a). The statute does not define the criteria that a case must satisfy in order to qualify as "exceptional." See id. At the time DirecTV's motion was filed, the Fourth Circuit held that a case was "exceptional" only where "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004). After briefing on defendant's motion was closed, the Fourth Circuit decided Georgia–Pacific v. von Drehle Corp., which expanded the definition of "exceptional" in light of the Supreme Court's ruling in Octane Fitness, LLC v. Icon Health & Fitness, Inc., __ U.S. __, 134 S. Ct. 1749 (2014), a case that interpreted similar language in the Patent Act, 35 U.S.C. § 285. 781 F.3d 710, 719–21 (4th Cir. 2015).

In Octane Fitness, the Supreme Court held that, for purposes of the Patent Act, an "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

11

unreasonable manner in which the case was litigated." Octane Fitness, 134 S. Ct. at 1751. The Court further explained that district courts were to determine whether a case was "exceptional" in the exercise of their discretion, on a case-by-case basis. Id. Georgia–Pacific then adopted the Supreme Court's definition of "exceptional," as used in the patent context, expanding the definition of "exceptional" for purposes of the Lanham Act to include: 1) cases where there is an unusual discrepancy in the merits of the parties' respective positions, "based on the non-prevailing party's position as either frivolous or objectively unreasonable"; 2) cases where the non-prevailing party "has litigated the case in an unreasonable manner"; and 3) cases where there is otherwise "the need in particular circumstances to advance considerations of compensation and deterrence." See Ga–Pac., 781 F.3d at 721 (internal citations and quotations omitted).

1. Frivolous or Objectively Unreasonable

A finding that a claim is objectively unreasonable is to be based on "an objective assessment of the merits of the challenged claims and defenses." Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 544 (Fed. Cir. 2011) (internal quotations omitted). "Unless an argument or claim asserted in the course of litigation is so unreasonable that no reasonable litigant could believe it would succeed, it cannot be deemed objectively baseless for purposes of awarding attorney fees." Id. (internal quotations omitted). In light of the factual and legal contentions asserted by the Exclaim throughout the course of litigation, the court cannot conclude that its position was objectively baseless. As evidenced by the fact that this case went to trial, neither the law nor the evidence was so clear as to warrant only one conclusion.

2. Litigated in an Unreasonable Manner

Nor was this case litigated in an unreasonable manner. "[A] district court may award fees

12

in the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." Octane Fitness, 134 S. Ct. at 1757. Typically, this prong is satisfied where the non-prevailing party engages in some form of egregious conduct. See LendingTree, LLC v. Zillow, Inc., 54 F. Supp. 3d 444, 459–60 (W.D.N.C. 2014); Gametek LLC v. Zynga, Inc., No. CV 13-2546 RS, 2014 WL 4351414, at *3–4 (N.D. Cal. Sept. 2, 2014) (collecting cases). Such conduct includes, but is not limited to, the filing of false declarations and attempts to re-litigate issues decided prior to trial. GameTek, 2014 WL 4351414, at *3–4. Exclaim did not litigate this case in an unreasonable manner. Although DirecTV highlights some questionable discovery conduct on the part of Exclaim, (Def.'s Memorandum for Fees, DE 213, 3–4), there is no evidence that the case as a whole was litigated unreasonably. Notably, Exclaim has not attempted to re-litigate issues previously decided through its post-trial motions.

      3.      Compensation or Deterrence

Finally, there is not a special need for compensation or deterrence in this case. With regard to the need for compensation, the court already has considered the need to compensate DirecTV in ruling on its motion for increased profits under 15 U.S.C. § 1117(a).

In addition, there is no need for deterrence in this case. This prong bears close relation to the previous standard of "intentional and deliberate" infringement. Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 441 (4th Cir. 2011). This standard is met when the infringer acted "with the intent to infringe the plaintiff's protected mark." Ga.–Pac., 781 F.3d at 719. It is not enough that the plaintiff show "the act of infringement was done voluntarily and intentionally." Id. (quoting *In re* Outsidewall Tire Litig., 748 F. Supp. 2d. 557, 562 (E.D. Va.

13

2010)). Rather, this factor requires proof that the defendant acted with the subjective intent to violate the plaintiff's trademark. Id.

In support of its contention that this case is "exceptional," DirecTV points to the jury's finding that Exclaim acted "with the intent to confuse or deceive" as evidence of Exclaim's willful infringement. (Jury's Verdict as to DirecTV, 3). This finding alone cannot support an award of attorney fees. A finding that Exclaim acted with the intent to confuse or deceive necessarily implicates its actions only as they affect consumers. The relevant question under the "exceptional" inquiry is whether Exclaim intended its actions to have an adverse affect on DirecTV. There is no finding as to that fact and DirecTV offers no additional evidence to suggest that such a finding by the court is warranted.

## CONCLUSION

Based on the foregoing, defendant's motion for permanent injunction (DE 216) is GRANTED. Exclaim, and its owners, members, agents, servants, successors, assignees, affiliates, and all persons or entities acting in concert or participation with Exclaim or controlled by Exclaim or its members or owners hereby are ENJOINED from:

1. Using – or inducing, encouraging, or aiding others to use – the DIRECTV® trademark or any confusingly similar variations thereon (collectively, the "DIRECTV® Mark") in connection with any directory listing, whether in print, online, or in any other medium;

2. Engaging in any conduct with respect to the DIRECTV® Mark in connection with any directory listing, whether in print, online, or in any other medium, that is likely to confuse the public into believing Exclaim and/or its products

or services are affiliated with or otherwise connected to DIRECTV;

3. Engaging in any other activity constituting infringement of the DIRECTV® Mark in connection with any directory listing, whether in print, online, or in any other medium.

Within **180 days** of this order, Exclaim is DIRECTED to:

(a) transmit written communication requesting immediate removal of any directory listing infringing the DIRECTV® Mark that was placed by or is currently under the control of Exclaim to any entity operating a directory service – whether in print, online, or in another medium – publishing a listing placed or controlled by Exclaim and infringing the DIRECTV® Mark; and

(b) file with the Clerk of this Court and serve on DIRECTV a report in writing and under oath setting forth in detail the manner and form in which it has complied with this Permanent Injunction.

In addition, defendant's motion for attorney fees (DE 212) is DENIED. This case does not present "exceptional" circumstances within the meaning of the Lanham Act, where Exclaim's position was not objectively baseless, the matter was not litigated in an objectively unreasonable manner, and there is no need to further considerations of compensation and deterrence. With the disposition of these motions, the court has concluded all matters outstanding in this case. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 30th day of September, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

15

Case 5:11-cv-00684-FL   Document 259   Filed 09/30/15   Page 15 of 15